COMMONWEALTH EDISON COMPANY, Petitioner-Appellant, v. THE IL-LINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.—CITI-ZENS UTILITY BOARD, Petitioner-Appellant, v. THE ILLINOIS COM-MERCE COMMISSION *et al.*, Respondents-Appellees.—COMMUNITY ACTION FOR FAIR UTILITY PRACTICE *et al.*, Petitioners-Appellants, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.

First District (1st Division)  Nos. 1—88—1437, 1—88—1833, 1—88—2030, 1—88—2231 cons.

Opinion filed December 30, 1988.—Rehearing denied January 30, 1989.— Modified opinion filed February 14, 1989.

David F. Graham, Howard J. Trienens, and Michael I. Miller, all of Sidley & Austin, of Chicago, for Commonwealth Edison Company.

Robert L. Graham, Norman M. Hirsch, and Stuart M. Gimbel, all of Jenner & Block, of Chicago, for Citizens Utility Board.

Allen W. Cherry and James Biggs, both of Legal Assistance Foundation, of Chicago, for South Austin Coalition Community Council, Community Action for Fair Utility Practice, and National People's Action.

Richard M. Daley, State's Attorney, of Chicago (Glenn C. Carr and Jack

A. Pace, Assistant State's Attorneys, of counsel), for People of Cook County.

Neil F. Hartigan, Attorney General, of Springfield, and Office of Public Counsel, of Chicago (Michael J. Kelly, Karen L. Lusson, and Joan G. Fickinger, Assistant Attorneys General, of Chicago, and Stephen J. Moore and Thomas H. Rowland, of counsel), for the People.

Clyde Kurlander, Edward P. O'Brien, and John P. Kelliher, all of Illinois Commerce Commission, of Chicago, for respondent Illinois Commerce Commission.

JUSTICE O'CONNOR delivered the opinion of the court:

In this consolidated case, Commonwealth Edison Company is petitioning for a review of the order by the Illinois Commerce Commission (Commission) of April 27, 1988 (docket No. 86—0128), previously stayed by this court. That order reduced the seasonal differential for residential rates by decreasing summer charges and increasing nonsummer charges. The Citizens Utility Board (CUB), Community Action for Fair Utility Practice (CAFFUP), National People's Action (NPA), South Austin Coalition Community Council (SACCC) and the People of the State of Illinois by the Attorney General of the State of Illinois (hereinafter collectively referred to as CUB) are petitioning for review of the order of June 8, 1988 (docket No. R. 18712), in which the Commission subsequently granted Edison's petition for special permission to revise its seasonal rate differential without providing 45 days' notice to the Commission and the public as required by section 9—201 of the Public Utilities Act (Ill. Rev. Stat. 1987, ch. 111⅔, par. 9—201). The Cook County State's Attorney, on behalf of the People of Cook County, filed a brief supporting the Commission's April 27, 1988, order. The office of public counsel, on behalf of the People of the State of Illinois, filed briefs supporting the Commission's April 27, 1988, order and supporting reversal of the Commission's June 8, 1988, order.

The principal questions raised on review are whether this court has jurisdiction to review the Commission's action and whether the Commission's June 8 decision in docket No. R. 18712 was arbitrary and capricious and is therefore void.

Commonwealth Edison, petitioner in case No. 88—1437, filed a revised residential rate schedule with the Illinois Commerce Commission, the intended purpose of which was to reduce between summer and nonsummer residential rates the differential which had been the

cause of substantial customer dissatisfaction. Hearings were held over a period of approximately two years in an effort to determine the appropriate level of Edison's seasonal rate differential and extensive testimony was introduced by Edison, the Commission and the consumer intervenors. The proposal was designed to be revenue neutral in that the loss of revenue caused by the decrease in summer rates would be offset by the gain from increased nonsummer rates.

On April 23, 1988, the Commission served its final order in docket No. 86—0128, reducing the summer charges and increasing nonsummer charges. The Commission's order instituted the following set of rates for Edison's residential service:

Energy Charges
Summer

| | |
|---|---|
| 0 to 400 kwh | $0.09600 |
| Over 400 kwh | 0.12500 |

Nonsummer

| | |
|---|---|
| 0 to 400 kwh | $0.06130 |
| Over 400 kwh | 0.06130 |

The Commission found that these rates were revenue neutral on an annual basis and that Edison's claims of a lack of revenue neutrality had been "reasonably addressed." The Commission also concluded that "restructuring of the residential rates *** is in the public interest and responds to justifiable customer dissatisfaction with the current rate structure."

The parties strongly disagree as to whether the rates established in the order were revenue neutral. Edison contends that they were not revenue neutral because they were instituted in mid-year and therefore Edison would obtain summer revenues lower than necessary in order to maintain revenue neutrality through the end of calendar year 1988. CUB contends that Edison would not suffer irreparable harm and points out that, in the past, the Commission has never required revenue neutrality on a calendar-year basis. Rather, the Commission has consistently set rates based on a 12-month period, and CUB notes that on a 12-month basis, the rates would be revenue neutral.

Following the entry of the Commission's order, Edison filed an application for rehearing and motion for stay of order. The Commission denied Edison's motion, and Edison petitioned this court for a review of the order in docket No. 86—0128 and a stay of the Commission's order pending review. Edison alleged in the petition that residential customers would not be harmed by a stay of the Commission's order because of the potential availability of refunds. This court

granted a stay on May 13, 1988.

On June 3, 1988, Edison then filed with the Commission a petition for special permission to file revised rates for residential service in less than 45 days. (Docket No. R. 18712.) One of the bases for the requested special permission was the change in circumstances occasioned by the stay. The proposed rates were substantially different from the rates found by the Commission to be in the public interest in docket No. 86—0128. CUB pointed out in its petition for rehearing that Edison's proposed rates would increase Edison's revenues by about $140 million over a 12-month period, a fact that Edison does not dispute. The proposed rates, shown below, were almost identical to those proposed by Edison in its March 31, 1988, tariff, which had been suspended by the Commission on April 27, 1988.

Energy Charges

|  | Prior Rates | June 3, 1988 Tariff | March 31, 1988 Tariff | Docket No. 86—0128 Order |
|---|---|---|---|---|
| Summer |  |  |  |  |
| 0 to 400 kwh | $0.14165 | $0.12375 | $0.12417 | $0.09600 |
| Over 400 kwh | $0.14165 | $0.12375 | $0.12417 | $0.12500 |
| Nonsummer |  |  |  |  |
| 0 to 400 kwh | $0.07633 | $0.12375 | $0.12417 | $0.09600 |
| Over 400 kwh | $0.04786 | $0.05230 | $0.05000 | $0.06130 |

On June 8, 1988, the Commission granted Edison's petition. No hearings were held on the proposed rate change and no notice was provided to the interested parties. The Commission did not explain its reversal of the rates approved in docket No. 86—0128 nor did it explain its approval of a calendar-year revenue neutral redesign of Edison's rates which was contrary to established Commission practice of instituting rate changes on a 12-month revenue neutral basis. In cases Nos. 88—1833, 88—2030 and 88—2231, CUB contends that the Commission's June 8 decision granting Edison's petition without notice, a hearing, evidence or findings of fact was beyond the Commission's jurisdiction and should be set aside.

The first argument raised by Edison is that discretionary nonsuspension orders are not subject to direct judicial review and therefore this court lacks jurisdiction to review the Commission's June 8, 1988, order. Edison claims that the June 8 order is unreviewable for three reasons. First, under *Antioch Milling Co. v. Public Service Co.* (1954), 4 Ill. 2d 200, 123 N.E.2d 302, the decision not to suspend a newly filed tariff cannot be reviewed for "abuse of discretion" as there is no requirement that the Commission make findings in support of its deci-

sion. Therefore, a reviewing court would be limited to speculating as to the reasons for the Commission's decision. Second, such decisions are not reviewable because of their preliminary and nonfinal nature. In choosing to suspend a tariff or allow it to take effect, the Commission does not resolve the issue of reasonableness; thus, this is an interlocutory order inappropriate for review under the Public Utilities Act. Third, there is a complaint mechanism available to CUB that not only would create a final and reviewable order, it would also provide adequate retroactive relief in the form of reparations with interest to any party aggrieved by the interim operation of an unsuspended tariff.

■ We do not view this matter as a decision not to suspend pursuant to section 9—201 but rather as an order altering and rescinding a prior order of the Commission pursuant to section 10—113 (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 10—113), an order this court has jurisdiction to review.

While there is no question but that the courts have given the Commission great discretion in determining whether to suspend or not to suspend rates (*Antioch Milling Co. v. Public Service* (1954), 4 Ill. 2d 200, 204, 123 N.E.2d 302), the context in which the courts have discussed the issue of Commission discretion has been that of traditional rate cases. See, *e.g., Antioch Milling* (1954), 4 Ill. 2d 200, 204-06, 123 N.E.2d 302; see also *City of Chicago v. Illinois Commerce Comm'n* (1958), 13 Ill. 2d 607, 610-11, 150 N.E.2d 776; *Central Illinois Public Service Co. v. Illinois Commerce Comm'n* (1955), 5 Ill. 2d 195, 210-11, 125 N.E.2d 776.

In *Antioch Milling,* a party challenged the Commission's grant of permission allowing a change in a utility's rates without first conducting formal hearings on the change and without the issuance of an order containing specific findings of fact to support the change. The court, in analyzing section 36 of the Public Utilities Act (Ill. Rev. Stat. 1953, ch. 111²/₃, par. 36 (now Ill. Rev. Stat. 1987, ch. 111²/₃, par. 9—201)), specifically held that neither prior evidentiary hearings nor express findings of fact were required as a condition precedent to placing a change in rates into effect. *Antioch Milling,* 4 Ill. 2d at 204-06.

Unlike the circumstances in *Antioch Milling,* this matter has not come before the court as a traditional rate case, and therefore we do not believe *Antioch Milling* is dispositive. In a traditional rate case, the utility asks for a rate change, the Commission determines whether to suspend the tariff or let it go into effect and the Commission then may hold hearings to determine whether the rate was just

and reasonable. (Ill. Rev. Stat. 1987, ch. 111⅔, par. 9—201.) Here, in contrast, the Commission's determination of what would constitute an appropriate rate differential did not begin when the petition for special permission was filed on June 3, 1988. It began in 1986 when the Commission suspended Edison's initial tariff on summer-winter rates and conducted an extensive investigation over a two-year period to determine appropriate rates. Following the investigation, the Commission ordered a new rate structure which it had determined to be in the public interest. At the same time, the Commission suspended an alternative rate proposal that had been filed by Edison on March 31, 1988.

Although Edison characterizes the June 3 petition as a new rate filing, in substance it was a petition for rehearing in that it sought to modify and rescind the Commission's earlier order. Like the April 27 order, the June 3 petition addressed the issue of reducing customer dissatisfaction with the seasonal rate differential. In addition, the rates proposed by Edison in the special permission were within $.00045 of the rates set forth in the March 31 tariff which the Commission had suspended the same day as it entered the April 27, 1988, order. Edison itself acknowledged that the rate change sought in the special permission was merely a partial solution to the seasonal rate differential problem and an alternative means of addressing the issue. At Edison's urging, the Commission in effect altered and rescinded its April 27 order as contemplated by section 10—113 of the Public Utilities Act (Ill. Rev. Stat. 1987, ch. 111⅔, par. 10—113), and such decisions are subject to review by this court pursuant to section 10—201 (Ill. Rev. Stat. 1987, ch. 111⅔, par. 10—20).

We next address CUB's claim that the Commission's June 8 decision was arbitrary and capricious and is therefore void. Edison's position is that in the absence of findings and an evidentiary record as to the reasonableness of the new tariff, there is no basis for finding the Commission's June 8, 1988, order arbitrary and capricious. Edison contends that there is no inconsistency between the Commission's June 8, 1988, order and any of its past decisions. Edison points out that the purpose of the Public Utilities Act is to provide "machinery for continuous regulation as changes in conditions require" (*Illinois Bell Telephone Co. v. Illinois Commerce Comm'n* (1953), 414 Ill. 275, 281, 111 N.E.2d 329), and that past rate decisions do not foreclose the Commission from considering or accepting newly proposed tariffs.

Edison also contends that the orders are not inconsistent because they are procedurally different: the April 27, 1988, order was a decision on the merits, based on various findings, and the June 8 order

was not. Furthermore, Edison suggests that the fact that the June 8 rates differ from the April 27 rates does not mean that the new rates cannot also be "just and reasonable" and within the discretion of the Commission to impose.

Edison also argues that numerous changes occurred subsequent to the April 27 order which justify the June 3 tariff. First, Edison claims that the June 3 tariff itself is a change in circumstances as the rates differed from those considered in docket No. 86—0128. Second, Edison points out that it was contemplated that Edison's general rate case would be decided by July 19, 1988, thereby allowing shortfalls resulting from the April 27 order to be compensated for in 1988 and this rate case has not yet been decided. Third, Edison claims that this court's stay of the April 27 order left intact the prior rate schedule which all of the parties agreed was unfair. Edison's final point in this regard is that under *Chicago Housing Authority v. Illinois Commerce Comm'n* (1960), 20 Ill. 2d 37, 42, 169 N.E.2d 268, any inconsistency in the orders is irrelevant as the only issue raised by a newly filed tariff is its reasonableness.

In further support of its argument that the June 8 order was not arbitrary and capricious, Edison argues that the June 8 order was an attempt to achieve revenue neutrality for the calendar year 1988, which the April 27 order failed to do. Edison claims that the April 27 order would have resulted in a revenue reduction because the rates were to remain in effect only until December 31, 1988, rather than for a 12-month period.

■ Initially, we disagree with Edison's claim that, in the absence of specific findings, this court cannot review the Commission's action for abuse of discretion. To do so does not require that we determine whether the rates established by the Commission were proper. It requires only that we determine why the Commission acted as it did, whether the Commission had established a general policy, whether it followed or deviated from that policy in establishing docket No. R. 18712 and whether it had a rational basis for its decision. We believe it did not and agree with Commissioner Romero's conclusion that the Commission abandoned the rules of principled regulation in an effort to approve any tariff which would lower the summer rates however slight the reduction.

■ We believe the Commission's June 8 order was arbitrary and capricious in that it rescinded prior valid orders of the Commission in the absence of any change in circumstance and it allowed a change in Edison's rate design which was revenue neutral on a calendar year rather than a 12-month basis, contrary to accepted Commission prac-

tice. Further, we find the Commission's action to be contrary to law in that it violated section 10—113 of the Public Utilities Act.

■ While section 9—201 of the Public Utilities Act grants the Commission discretion to permit proposed rates to take effect without a hearing (*Antioch Milling Co. v. Public Service Co.* (1954), 4 Ill. 2d 200, 204, 123 N.E.2d 302), an agency's discretionary powers "must be exercised judiciously, not arbitrarily." (*Robert N. Nilles, Inc. v. Pollution Control Board* (1974), 17 Ill. App. 3d 890, 894, 308 N.E.2d 640.) An administrative agency's exercise of discretion will be set aside when the authority is exercised in an arbitrary or unreasonable manner or when it is a clear violation of a rule of law. *Cotovsky v. Department of Registration & Education* (1982), 110 Ill. App. 3d 417, 424, 442 N.E.2d 520, *appeal denied* (1983), 93 Ill. 2d 541; *City of Hurst v. Illinois Commerce Comm'n* (1983), 120 Ill. App. 3d 354, 360, 458 N.E.2d 568.

The Commission's order in docket No. 86—0128 represented a careful resolution of the controversy surrounding Edison's seasonal rate differential. That order was entered after more than two years of litigation. Appropriate procedural safeguards were employed in docket No. 86—0128, including several hearings, extensive briefing by the parties, oral argument and detailed findings of fact. On the basis of that record, the Commission set forth the rates it determined to be in the public interest.

However, without a hearing and upon only five days of consideration, the Commission granted Edison's petition for special permission, which radically altered the residential rates established in docket No. 86—0128. In our opinion the Commission's decision to supersede rates it had determined to be in the public interest less than two months earlier was arbitrary and capricious.

The rates authorized by the Commission on June 8 were substantially different from the rates previously established by the Commission in docket No. 86—0128, as the comparative chart previously set out illustrates. The Commission's June 8 decision increased the energy charges by nearly 3 cents per kilowatthour for residential customers' first 400 kilowatthours of electricity used during both the summer and nonsummer periods compared to the rates set in docket No. 86—0128, an increase of approximately 30%. Moreover, the June 8 decision perpetuates the summer flat rate despite the nearly unanimous evidence that led the Commission to establish an inverted summer rate structure in docket No. 86—0128. Thus, the Commission's June 8 decision resulted in a significant change in the residential rates which the Commission had found, in docket No. 86—0128, to be

in the public interest in April 1988. In addition, the rate structure authorized in the special permission was virtually identical to the proposed rates contained in Edison's March 31, 1988, tariff, a tariff which the Commission suspended on April 27, 1988, after determining that the March 31 rates should not be put into effect without a hearing.

Although, as stated previously, the parties disagree as to the revenue neutrality of docket No. 86—0128, we believe the Commission's decision on June 8 to allow a change in Edison's rate design that was not revenue neutral on a 12-month basis was arbitrary and capricious as it was clearly contrary to accepted Commission practice. As the Commission recognized in its motion in this court to vacate the stay of docket No. 86—0128, "[i]t is a fundamental principle of utility regulation that rates are set by the Commission through use of a 12-month measuring period." The Public Utilities Act does not require that rates be set on anything other than a 12-month basis, yet here the Commission permitted Edison to reduce the seasonal rate differential in a manner designed to produce neutral revenues during the remainder of 1988 rather than on an annual basis. The apparent effect of this departure from the Commission's normal regulatory practice is to produce a windfall of approximately $140 million in revenue over a 12-month period.

The 12-month measuring period for determining the revenue neutrality of changes in Edison's rate design was used by the Commission in docket No. 86—0128. It was also used in April of 1979, when Edison's seasonal rate differential was initially instituted and all subsequent changes have uniformly applied the 12-month measuring period. See *Re Commonwealth Edison Co.* (1985), 71 P.U.R.4th 81, 126-28; *Re Commonwealth Edison Co.* (1984), 61 P.U.R.4th 1, 47; *Re Commonwealth Edison Co.* (1982), 50 P.U.R.4th 221, 258.

■ The Commission's approval of Edison's request for a calendar-year revenue neutral redesign of the company's rates, in light of the Commission's established practice of instituting such rate design changes on the basis of annual revenue neutrality, was arbitrary and unlawful. Although the time frame to be employed in analyzing a proposed rate design's effects on revenue falls within the scope of the Commission's "sound business judgment" (*Illinois Bell Telephone Co. v. Illinois Commerce Comm'n* (1973), 55 Ill. 2d 461, 476, 303 N.E.2d 364), the Commission "may not depart, *sub silentio,* from its usual rules of decision to reach a different, unexplained result in a single case" (*National Labor Relations Board v. International Union of Operating Engineers, Local 925, AFL-CIO* (5th Cir. 1972), 460 F.2d 589,

604). In the present matter, the Commission radically altered its past practice regarding the time frame for analyzing revenue neutrality without notice to interested parties, a hearing, or any readily apparent reason.

Edison's contention that the Commission's past decisions cannot limit the scope of its authority under section 9—201 is not well founded under the circumstances here. While ordinarily an administrative action taken pursuant to statutory authority is entitled to great deference, an agency action that represents an abrupt departure from past practice is not entitled to the same degree of deference by a reviewing court. See *Olin Corp. v. Pollution Control Board* (1977), 54 Ill. App. 3d 480, 485, 370 N.E.2d 3, *appeal denied* (1978), 71 Ill. 2d 599.

■ The special permission also altered and rescinded the April 27 order contrary to section 108—113 of the Public Utilities Act. Section 10—113 provides that "the Commission may at any time, upon notice to the public utility affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any rule, regulation, order or decision made by it." (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 10—113.) It is well settled that "an administrative agency may allow a rehearing, or modify and alter its decisions, only where authorized to do so by statute." (*Pearce Hospital Foundation v. Illinois Public Aid Comm'n* (1958), 15 Ill. 2d 301, 307, 154 N.E.2d 691; see also *People ex rel. Olin Corp. v. Department of Labor* (1981), 95 Ill. App. 3d 1108, 1112, 420 N.E.2d 1043, *appeal denied* (1981), 85 Ill. 2d 574.) Where statutory requirements are not followed as to notice, hearing, the presentation of evidence and finding of fact, the Commission loses its jurisdiction to act and any order entered by the Commission under such circumstances is void. See *American National Bank & Trust Co. v. Pennsylvania R.R. Co.* (1964), 52 Ill. App. 2d 406, 431-32, 202 N.E.2d 79, *aff'd* (1966), 35 Ill. 2d 145, 219 N.E.2d 529, *cert. denied* (1967), 385 U.S. 1035, 17 L. Ed. 2d 683, 87 S. Ct. 777.

We believe that the June 8 action was not a newly proposed rate, as Edison now contends, but an attempt to get the Commission to rehear issues that it had recently resolved. This conclusion is based on the fact that Edison raised the same issues relative to the seasonal rate differential in both tariffs and that it relied on the stay of the April 27 order as a basis for introducing the June 3 tariff. In its petition for special permission, Edison acknowledged as much when it stated:

> "Reduction of the seasonal differential in charges for residential customers is an objective that Edison and the Commission

share. To this end, Edison recently filed an application for Rehearing in Docket No. 88—0104 urging the Commission to permit the version of Rate 1 which Edison filed on March 31, 1988 to take effect with the start of summer billing. As an alternative means of achieving this objective, Edison now requests that the rates shown in Exhibit A be allowed to become effective for the first summer billings and thereafter, rather than the rates fixed on March 31, 1988.''

As such, the Commission's decision to grant Edison's petition for special permission without notice, a hearing, evidence or findings of fact was beyond the Commission's jurisdiction and is void.

■■ With respect to Edison's claim that the special permission was appropriate based on changed circumstances, there is no question but that our approval of Edison's request for a stay of order No. 86—0128 was not intended to constitute changed circumstances sufficient to justify modification of the April 27 order. In its memorandum in support of its motion for stay of order, Edison stated that it sought a stay "to preserve the status quo in aid of this court's ultimate jurisdiction to review the order." Edison further stated that the stay did "not threaten irreparable injury to any party" and that "the purpose of a stay pending judicial review is not to decide the merits but to preserve the court's ability to do so." This court granted the stay, at Edison's request, only for the purpose of preserving the status quo pending review, not for the purpose of justifying a modified tariff proposal.

In summary, we find that the order of the Illinois Commerce Commission entered on April 27, 1988, in docket No. 86—0128 was lawful as the rates set in that order were the results of two years' preparation and were established consistent with the Commission's past practices and procedural fairness to the consumer intervenors. The June 8 special permission in docket No. R. 18712 modifying that order contrary to section 9—201 of the Public Utilities Act (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 9—201) is void and must be set aside.

Accordingly, the stay entered by this court on May 13, 1988, in appeal No. 88—1437 is vacated and Edison's motion for declaration of mootness is denied.

No. 1—88—1437, Order affirmed.
Nos. 1—88—1833, 1—88—2030, 1—88—2231, Order reversed.

BUCKLEY and MANNING, JJ., concur.