THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General, *et al.*, Petitioners-Appellants, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.

First District (1st Division)   Nos. 1—90—0709, 1—90—0720, 1—90—0848, 1—90—0849, 1—90—1103, 1—90—1104 cons.

Opinion filed July 15, 1991.

Neil F. Hartigan, Attorney General, of Springfield (Robert W. Cushing and G. Darryl Reed, Assistant Attorneys General, of Chicago, of counsel), for petitioner People of the State of Illinois *ex rel.* Hartigan.

Cecil A. Partee, State's Attorney, of Chicago (Thomas H. Rowland and Robert K. Lock, Assistant State's Attorneys, of counsel, for petitioner People of Cook County *ex rel.* Partee.

Office of Public Counsel, of Chicago (Stephen J. Moore, of counsel), for petitioner Office of Public Counsel.

Kelly R. Welsh, Corporation Counsel, of Chicago (Jean Dobrcr, Assistant Corporation Counsel, of counsel), for petitioner City of Chicago.

Jenner & Block, of Chicago (Robert L. Graham, Norman M. Hirsch, and Jose E. Rivera, of counsel), for petitioner Citizens Utility Board.

Legal Assistance Foundation of Chicago, of Chicago (Allen W. Cherry and Susan Wallitsch, of counsel), for petitioners Community Action for Fair Utility Practice, National Peoples' Action, and South Austin Coalition Community Council.

Neil F. Hartigan, Attorney General, of Springfield (James E. Weging, Special Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Commerce Commission.

Sidley & Austin, of Chicago (Howard J. Trienens, Michael I. Miller, David F. Graham, and Gerard D. Kelly, of counsel), for respondent Commonwealth Edison Company.

JUSTICE O'CONNOR delivered the opinion of the court:

In this appeal, we consider whether the Illinois Commerce Commission (Commission) properly determined the amount of refund due consumers of electricity service provided by Commonwealth Edison Company (Edison) in view of our decision in *Commonwealth Edison Co. v. Illinois Commerce Comm'n* (1989), 180 Ill. App. 3d 899, 536 N.E.2d 899, *appeal denied* (1989), 126 Ill. 2d 557, 541 N.E.2d 1105.

In *Commonwealth Edison*, we affirmed an order of the Commission in docket No. 86—0128, approving a revised rate schedule which had been originally proposed by Edison in response to consumer dissatisfaction with the disparity between seasonal rate charges for electricity. We also vacated an order granting Edison's petition for special permission to implement revised rates in docket No. R. 18712. The special permission was allowed subsequent to our grant of a stay, at Edison's request, of operation of the docket No. 86—0128 order, pending Edison's challenge to that order on appeal. Because the rates authorized by special permission in docket No. R. 18712 were substantially different from those established in docket No. 86—0128, consumers were charged more than they would have been charged had the rates under the docket No. 86—0128 order not been stayed. See *Commonwealth Edison*, 180 Ill. App. 3d 907, 536 N.E.2d 899, *appeal denied* (1989), 126 Ill. 2d 557, 541 N.E.2d 1105.

In the wake of our decision in *Commonwealth Edison*, the Illinois Attorney General, the Cook County State's Attorney, and three community groups, National Peoples' Action, South Austin Coalition Community Council, and Community Action for Fair Utility Practice, filed complaints with the Commission seeking refunds from Edison for overpayments made during the period June 8 through December 31, 1988, when the rates imposed by special permission in docket No. R. 18712 were in effect. The actions were consolidated. The office of public counsel, the Citizens Utility Board, and the City of Chicago also eventually joined in the proceedings before the Commission.

Following several evidentiary hearings, methodologies for calculating the refund amount were submitted by the parties to the Commission, including a recommendation by the Commission's staff. The Commission subsequently heard oral argument in October 1989. On February 23, 1990, the Commission entered its order in the matter.

Essentially adopting the methodology urged by Edison, the Commission determined the refund amount to be approximately $5.7 million.

In turn, the governmental and consumer groups (together, complainants) initiated this appeal (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 10—201; 134 Ill. 2d R. 335), contending that the adopted methodology effectively eliminated consideration of the rates which should have applied under the docket No. 86—0128 order, resulting in an improperly calculated refund.

For reasons which follow, we agree.

Our disposition in the instant matter depends on an understanding of the chronology of events, including rate proposals and rates actually in effect, before, during, and after the time period for which the rate schedule contained in the docket No. 86—0128 order should have been in effect. To that extent, we must repeat some of the facts previously set out in *Commonwealth Edison.*

Under the established tariff for residential electricity use which would have been in effect through December 31, 1988, had the events in the instant case not taken place, Edison employed a rate schedule which utilized a seasonal rate differential permitting Edison to charge a higher rate per kilowatt hour during a four-month summer period than that charged per kilowatt hour during an eight-month nonsummer period. In 1986, Edison, in response to consumer dissatisfaction regarding the seasonal rate differential, initiated proceedings before the Commission in docket No. 86—0128, proposing to decrease the rate differential between summer and nonsummer months. Shortly thereafter, Edison successfully sought to terminate those same proceedings in view of a proposed settlement of the matter. However, the Commission eventually denied Edison's petitions regarding settlement.

Edison subsequently initiated proceedings in docket No. 87—0427, seeking to implement a new rate schedule containing overall rate increases to become effective January 1, 1989. The issue of the seasonal rate differential under that rate schedule was included in the considerations before the Commission. Proceedings in docket No. 87—0427 remained pending throughout much of 1988.

In 1988, the Commission, on its own motion, reopened the record in docket No. 86—0128. The Commission's intention was to draft an order based on the existing record in that docket as well as relevant portions of other prior proceedings related to altering the seasonal rate differential. However, the Commission did consider briefs and exceptions submitted by Edison, the Illinois Attor-

ney General, the Cook County State's Attorney, the Citizens Utility Board, Community Action for Fair Utility Practice, National Peoples' Action, and the Commission's staff, and held hearings on the matter.

The Commission entered its order in docket No. 86—0128 on April 27, 1988. Because proceedings in docket No. 87—0427 would not be concluded until well after the summer rate schedule, as altered by the docket No. 86—0128 order, became effective, the order was specifically intended to effectuate only an interim alteration of the summer rates to be charged during 1988 under the then existing rate schedule. The rate charges were to go into effect with the summer month billing period in June.

The Commission noted that Edison's original proposal in docket No. 86—0128 contained complementary increases in rates over the nonsummer period. Those complementary increases would have the effect of offsetting the decrease in revenues which Edison would otherwise have expected if the summer rates were not lowered. The Commission acknowledged that it intended to likewise maintain the same "revenue neutrality" in its order. However, in the proceedings held pursuant to the reopened docket, Edison had asserted that the order proposed by the Commission in docket No. 86—0128 would achieve revenue neutrality only if the restructured rates remained in effect over a 12-month time frame, containing both summer and nonsummer billing periods. However, Roland Kraatz, Edison's director of rates, had testified that to preserve revenue neutrality, the Commission could take into account the need to recoup any decrease in revenue during the remainder of 1988 in rates set in the docket No. 87—0427 proceedings.

Achievement of revenue neutrality was in issue throughout proceedings in the reopened docket. The Commission's staff had criticized Edison's claim of achieving revenue neutrality at the time Edison had made its proposal in docket No. 86—0128 because Edison had not considered whether consumer use would be affected based on the changed rates. The Attorney General, recognizing the proceedings in docket No. 87—0427 would not be completed prior to the start of the 1988 summer rate billing period, had accepted the revenue-neutral treatment for 1988 only, relying on statements in the proposed order in docket No. 86—0128 that the parties would not be prejudiced by that rate design.

In its conclusion, the Commission observed that the rates recommended in the docket No. 86—0128 order would be revenue neutral on an annual basis only if the rates were implemented on

January 1, 1988. Any revenue shortfall, the Commission determined, could be appropriately addressed directly in docket No. 87—0427 by adjusting for any actual shortfall resulting from the rates implemented under the docket No. 86—0128 order. That calculation could take into account any increase in sales during the period the rates under the docket No. 86—0128 order were in effect, as well as the difference in revenue shift from summer to nonsummer rates as set forth in the order. Accordingly, the order provided, in Finding 10:

> "[T]he annual revenue requirements established in Edison's most recent rate case, and currently utilized in the rate levels under Edison's existing tariffs, are maintained in the restructuring of Rate 1—Residential Rate and the rates established in this proceeding; consideration should be given in Docket 87—0427, to any actual revenue shortfalls resulting from the rates established herein offset by any quantifiable increase in sales during the summer billing period for the period of time during which the rates remain in effect; appropriate modification should be implemented in 1988, to the extent possible."

On December 30, 1988, the same day in which the decision in *Commonwealth Edison* was filed, the Commission entered its order in docket No. 86—0427, authorizing, effective January 1, 1989, implementation of rates generating an increase in revenues of approximately $235 million.

On February 23, 1990, following the filing of complainants' actions before the Commission in the instant case, the Commission issued its refund order. In a preface, the Commission acknowledged the period addressed by the refund order began in June, with the beginning of the 1988 summer rate billing period, and continued through December, the period during which rates in docket No. 86—0128 would have been in effect, and ended January 1, 1989, when rates imposed under the docket No. 87—0427 order became effective. The refund order also identified that the parties' disagreement centered on the achievement of revenue neutrality and interpretation of Finding 10 in addressing that issue. Essentially, the argument was whether, as Edison contended, Finding 10 required revenue neutrality for the period June through December 1988.

Edison had acknowledged that, if the rates contained in the docket No. 86—0128 order had been implemented, the revenue shortfall recoverable through Finding 10 would have exceeded $153 million in light of the revenues collected by special permission in docket No. R. 18712. However, Edison argued that the refund

should have been calculated for the relevant period by comparing revenues which would have been collected under the docket No. 86—0128 order, had Edison's stay of operation of that order not been allowed, and revenues which would have been collected assuming the Commission had not granted Edison the special permission to revise rates in docket No. R. 18712. Edison calculated that amount to be approximately $5.7 million. That calculation was consistent with *Commonwealth Edison*, Edison concluded, because the decision did not address what action the Commission should take in the event that rates designed to be revenue neutral over a 12-month period did not, in fact, remain in place for such a period.

Complainants contended that the refund amount should have been approximately $158.8 million. Complainants calculated that amount as the difference between amounts which should have been collected from June through December 1988 under the docket No. 86—0128 order and amounts actually collected under the special permission granted in docket No. R. 18712. Edison's refund calculation, complainants argued, was improper because Edison asserted that the rates set in the docket No. 86—0128 order must be revenue neutral from June through December 1988 on a "calendar-year" basis, rather than on a 12-month basis.

The Commission's staff agreed with both Edison and complainants that the refund calculation had to incorporate a consideration of the amounts which should have been collected had the docket No. 86—0128 order not been stayed. However, the staff recommended that the refund calculation should also have incorporated consideration of actual revenues collected by Edison over the relevant period. The Commission's staff's position acknowledged the intent of the docket No. 86—0128 order to be revenue neutral over a 12-month period, but contemplated that that period contain one full cycle of summer and nonsummer rate billing periods. Accordingly, the Commission's staff's methodology included consideration of amounts collected in 1989 in order to utilize a complete billing cycle as a means to best accomplish the Commission's intentions. The resulting refund amount totalled $43.2 million.

In its conclusion, the Commission recognized that revenue neutrality during 1988 would have been achieved under rates contained in the docket No. 86—0128 order only if those rates had been implemented on January 1, 1988. Mid-year implementation of the rates could achieve revenue neutrality only via adjustment through Finding 10 in proceedings then pending in docket No. 87—0427. The Commission concluded the effect of *Commonwealth Edison* was

to approve that goal. The Commission thus measured the refund by comparing revenues which would have been generated without entry of the docket No. 86—0128 order with revenues produced by the rates implemented by special permission in docket No. R. 18712. The Commission reasoned that, had the docket No. 86—0128 order not been stayed, those rates would have been in effect until December 31, 1988. Because summer rates would have been reduced substantially more under the docket No. 86—0128 order than under special permission granted in docket No. R. 18712, Edison would have had to have charged consumers approximately $153 million as a surcharge to achieve revenue neutrality. However, because rates in the docket No. 86—0128 order were not applied, the shortfall did not materialize and consumers paid only $5.7 million more than they would have paid if neither the order in docket No. 86—0128 nor the special permission in docket No. R. 18712 had been in effect. The Commission therefore concluded that amount was to be refunded. The Commission ordered the refund amount to be improved with simple interest at 5%, and directed that the refund should be paid to current consumers, rather than consumers who actually paid the rates under the docket No. R. 18712 special permission.

While orders of the Commission are deemed *prima facie* reasonable and the scope of review on appeal from such an order is recognized as limited under the Public Utilities Act (see Ill. Rev. Stat. 1987, ch. 111⅔, pars. 10—201(d), (e)), a reviewing court is not constrained to accept the Commission's determination on a question of law. (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1989), 136 Ill. 2d 192, 555 N.E.2d 693.) We have found no case in this State involving consideration of the Commission's interpretation of one of its previous orders to determine the appropriate refund under circumstances such as are present here. However, there can be no question but that the appropriateness of the present refund order presents a legal question as it resulted from the Commission's interpretation of its own order in docket No. 86—0128 in light of judicial invalidation of the special permission granted in docket No. R. 18712. See *General Mills, Inc. v. Illinois Commerce Comm'n* (1990), 201 Ill. App. 3d 715, 559 N.E.2d 225.

The Commission's refund order correctly identifies the relevant time period to be addressed by the refund as the period from June through December 1988, the time when rates under the docket No. 86—0128 order should have been in effect. However, the meth-

odology adopted to arrive at the appropriate refund amount incorporated an improper interpretation of Finding 10, requiring the attainment of revenue neutrality over that time period. Certainly, preservation of Edison's revenue requirements was a concern throughout the proceedings in docket No. 86—0128 and thus was reflected in the adjustment provision contained in Finding 10. Finding 10, however, was never intended to operate to achieve that result through implementation of the rates in the docket No. 86—0128 order over the relevant time period, which consideration necessarily incorporates, in light of the stay of that order, the improper implementation of the special permission rates in docket No. R. 18712. Rather, Finding 10 contemplated that any revenue shortfall resulting from implementation of the rates in the docket No. 86—0128 order was to be addressed, if at all, in consideration of proceedings in docket No. 87—0427, then pending before the Commission.

Indeed, the record indicates that when the rates contained in the docket No. 86—0128 order were implemented in June 1988, it was contemplated that those rates would be in effect only until the rates contained in the docket No. 87—0427 order would become effective on January 1, 1989. Moreover, all parties understood that the rate schedule contained in the docket No. 86—0128 order could achieve revenue neutrality only if implemented over a complete 12-month billing cycle which included both summer and nonsummer rate billing periods. Last, Finding 10 contemplated timely effect of the order entered in docket No. 86—0128. In short, the effect of the interpretation given Finding 10 in the methodology adopted by the Commission in the refund order results in elevating concern for Edison's revenue requirements above a concern for recognition of the proper rates which should have been charged consumers, but which were not implemented, over the relevant time period.

To that extent, the refund methodology adopted by the Commission is flawed and the refund order must be reversed. Had Edison not sought to stay operation, pending appeal, of the rate schedule contained in the docket No. 86—0128 order, which schedule Edison, itself, originally proposed, and had Edison not sought, in the interim, to implement rates by special permission in docket No. R. 18712, which proceedings we later determined to be improper, consumers would have paid revenues under the schedule contained in the docket No. 86—0128 order. Actual revenue shortfalls resulting during the period June through December 1988 could have been re-

couped by Edison through proper operation of Finding 10 by adjusting rates in the then pending proceedings in docket No. 87—0427.

Thus, the appropriateness of a refund determination in light of *Commonwealth Edison* must reflect the above concerns and must be founded on the realization that the rates imposed by special permission in docket No. R. 18712 should never have been implemented. The methodology must incorporate some means to reflect adjustments which Edison should have been permitted by Finding 10 to make in the proceedings in docket No. 87—0427 to offset actual revenue shortfalls resulting from operation of the rates imposed under the docket No. 86—0128 order over the period of time those rates should have been in effect from June through December 1988. To that extent, it may be necessary to consider amounts actually collected in 1989 under rates implemented under the docket No. 87—0427 order to permit consideration of a complete 12-month billing cycle.

Complainants have also raised issue with the Commission's application of simple interest at the rate of 5% to the refund and the decision to direct the refund to present Edison consumers.

■ With regard to applicable interest, complainants contend that the refund amount should be improved with compounded interest at the rate applicable to the rate Edison is required to pay on consumer deposits under the Illinois Administrative Code in section 280.70(e)(2), as permitted by section 280.75 (83 Ill. Adm. Code §280.75 (1985)). However, by its terms, section 280.75 applies only to refunds necessitated where a consumer "pays a bill as submitted by a public utility and the billing is later found to be incorrect due to an error either in charging more than the published rate, in measuring the quantity or volume of service provided, or in charging for the incorrect class of service." (83 Ill. Adm. Code §280.75 (1985).) Those circumstances are not present in the instant case.

■ Instead, because a refund is required here based on an improperly implemented rate schedule, the applicable interest is more appropriately determined pursuant to section 9—252 of the Public Utilities Act, which addresses excessive or unjust rates. Section 9—252 permits interest on the amount to be refunded at the "legal rate." (Ill. Rev. Stat. 1987, ch. 111⅔, par. 9—252.) In light of the applicability of section 9—252, we cannot conclude the Commission's decision to improve the amount to be refunded with simple interest at 5% was improper. See *Citizens Utilities Co. v. Illinois Commerce Comm'n* (1987), 157 Ill. App. 3d 201, 510 N.E.2d 52, *appeal denied* (1987), 116 Ill. 2d 549, 515 N.E.2d 103.

Last, complainants argue that the refund should issue directly to those consumers who actually paid greater amounts under the rates contained in the special permission in docket No. R. 18712. The record indicates that the Commission's determination that the then current consumers were to receive the refund was conditioned upon the amount of refund to be made under the methodology adopted. Because we find that methodology to be improper and reconsideration by the Commission necessary, we decline to pass, at this time, upon the propriety of issuing the refund only to current consumers pending the Commission's further consideration.

Reversed in part; affirmed in part and remanded.

MANNING, P.J., and BUCKLEY, J., concur.