(No. 35602.—)

CHICAGO HOUSING AUTHORITY, Appellant, *vs.* THE ILLI-
NOIS COMMERCE COMMISSION *et al.,* Appellees.

*Opinion filed September 29, 1960.*

Milton Mallin, of Chicago, (Goldberg, Weigle, Mallin & Rivkin, of counsel,) for appellant.

Grenville Beardsley, Attorney General, of Springfield, and Harry R. Begley, Special Assistant Attorney General, of Chicago, (George Phoenix, Jr., Assistant Attorney General, of counsel,) for appellee the Illinois Commerce Commission; and Isham, Lincoln & Beale, Charles A. Bane, Arthur C. Gehr, Richard D. Cudahy, and Max Swiren, all of Chicago, for appellee the Commonwealth Edison Company.

Mr. Chief Justice Schaefer delivered the opinion of the court:

Since 1950 the Commonwealth Edison Company has proposed, and the Illinois Commerce Commission has approved, several changes in Edison's rate structure which were designed to eliminate bulk sales of electricity to owners of multiple dwellings and office buildings who in turn furnish the electricity to their tenants. This case involves the latest of these changes, the adoption of Standard Contract Rider 18, which provides that Edison will not furnish electricity to public housing agencies for resale or redistribution to tenants in buildings constructed after the date of filing. The Chicago Housing Authority appealed to the circuit court of Cook County which affirmed the Commission's order. From the decision the Authority appeals to this court under section 69 of the Public Utilities Act. Ill. Rev. Stat. 1959, chap. 111⅔, par. 73.

Before 1950, Edison pursued a "one premises-one bill" rate policy, under which property owners were allowed to purchase through a single meter and at relatively low "large user" rates all the electricity consumed on any one undivided piece of real estate even if this electricity was actually used by hundreds of individual tenants living or working in many different buildings. Since Edison's rates provide decreasing charges per unit of energy as consumption increases, this aggregation of many users' demands in one bill reduced Edison's revenues below the level which would have been produced if each user had been billed separately.

In 1950 Edison first altered its interpretation of the "one premises-one bill" rule as it applied to multiple-dwelling projects comprising many buildings. It declared that each building would thereafter be considered a separate premises and would be billed separately. Within each building, however, the owner was still entitled to supply his tenant with electricity by any method he preferred.

In 1952 the Commission approved Edison's Rider 12 which forbade any customer from reselling electricity to third persons except in buildings where the practice was already established. Resale was defined to include furnishing electricity by a customer to a third party where a seperate charge for electricity is made or where the electricity is metered or its use limited even though no separate charge is made for it. Rider 12 also incorporated the interpretation of the "one premises-one bill" rule which made each building a separate premises. During the hearing before the Commission, the Authority objected to being subjected to Rule 12 restrictions on resale, claiming it was not engaged in this practice. As a result, the rider was altered to exempt public housing authorities from its operation.

So long as electricity was not metered or its use limited, Rider 12 did not forbid landlords from redistributing electricity to tenants and charging for it in the rent. In 1956, however, Rider 12 was revised to forbid redistribution as

well as resale. Again those buildings were excepted in which the practice was established prior to the date of filing. The revision became effective without a hearing or formal action by the Commission. It continued the specific exemption of public housing authorities.

Rider 18, which is the subject to the present controversy, was filed by Edison January 2, 1957. It rescinds the exemption of public housing authorities from the provisions of Rider 12. The record indicates that the appellant, the Chicago Housing Authority, is the principal, if not the only, public housing authority that will be affected by the change. The Authority is a municipal corporation created in 1937 under the Illinois Housing Authorities Act (Ill. Stat. 1959, chap. 67½, par. 1 *et seq.*) to provide safe and sanitary housing for low-income families in Chicago. Most of its low-rent housing projects are made possible by financial assistance from the Federal government in the form of loans for construction and annual subsidies to make up the difference between the rents which low-income families can pay for dwellings and the cost of providing such dwellings.

Near the end of 1956, the Authority maintained projects containing over 14,000 occupied dwelling units, with over 12,000 more under construction or in process of land acquisition and design. At projects constructed before 1951, Edison supplies electricity to all of the buildings in the project through one master meter. At later projects, electricity is supplied to each building individually. The Authority's policy has been "to furnish each family with the quantities of electricity and other utility services necessary for an adequate standard of living as an incident to tenancy on a rent inclusion basis." In addition, to prevent excessive consumption, the Authority has metered the electricity used by each tenant and imposed a penalty charge for all electricity consumed in excess of the quantity that it has determined to be adequate.

Rider 18 relates to future projects. It provides that

Edison will furnish electricity to each of the Authority's tenants through individual meters at the residential rate. As approved by the Commission, it also requires that Edison supply the Authority with electricity for its use for hallway lighting, elevators and other building operations under its governmental service rate, number 22, which is the lowest in Edison's rate schedule.

The Authority objects to this treatment on several grounds. First, it argues that all electricity consumed in each of its low-rent housing projects,—that consumed directly by tenants as well as that consumed by the Authority in providing services for tenants,—should be furnished under Rate 22. The availability clause of Rate 22 reads as follows: "This rate is available to any governmental agency occupying the premises and using the Company's electric service hereunder for a governmental purpose; provided, however, that electricity will not be furnished hereunder for resale." The Authority's position is that low-rent housing serves a governmental purpose and the governmental service rate for electricity is therefore available to it. The Commission, on the other hand, contends that electricity consumed by project tenants is not used for a "governmental purpose" and that in any case the Authority's practice of charging for excessive use constitutes resale forbidden by Rate 22.

This court has rejected the contention that public housing authority projects are not for a public use and do not serve a governmental purpose, when that contention was the basis for challenging an authority's tax exempt status, its right to exercise the power of eminent domain or the government's power to expend tax funds for low-rent housing. (*Krause* v. *Peoria Housing Authority*, 370 Ill. 356; *Kankakee County Housing Authority* v. *Spurlock*, 3 Ill.2d 277.) While the problems there involved were formulated in the same verbal terms, those decisions do not control the interpretation of the availability clause of Rate 22. The prob-

lems of ratemaking are different and their solution depends on other policy considerations. If the Commission's interpretation is not an unreasonable one, we will not overturn it.

In our opinion the Commission did not act arbitrarily or unreasonably in rejecting the Authority's contention that all electricity used by its tenants should be billed at the governmental service rate. The Authority's projects are "occupied" by the Authority in an unusual sense. They are dwelling places in which thousands of tenants live. Those tenants use electricity in the same manner and for the same purposes as do the tenants of other multiple-occupancy buildings. In order to develop a uniform rate system in which similar charges are imposed upon similar categories of users, the Commission was justified in focusing upon the purely domestic aspect of the uses made of electricity by the tenants, and treating those uses as residential, while ordering the governmental service rate for other electrical uses in the projects. Moreover, the Authority's separate meter and penalty charge system resembles in some respects a system of resale. The distinction drawn by the Commission between electricity used directly by tenants, which is billed at residential rates, and that used by the Authority to provide services which is billed at the governmental service rate, therefore tends to effectuate the policy of the provision in Rate 22 that forbids the resale of electricity furnished at the governmental service rate.

The Authority argues further that it should receive the governmental service rate for all electricity furnished to its projects because other governmental agencies are billed at that rate although some of their electricity is used in private dwellings. It cites Fort Sheridan and Great Lakes Naval Training Station as examples. However, although housing is provided on these installations, it is for personnel engaged directly in government service who are housed there for the convenience of the Federal government. Consistency does

not require the same treatment for the tenants of the Authority who are members of the general public. The same consideration applies to nurses' homes connected with public hospitals, and similar institutions.

The Authority also contends that Edison's refusal to serve those of its projects which were built after 1950 on a master meter basis at large user rates is discriminatory, since Edison serves other institutional, industrial and commercial users on this basis. It is true that combined billing is allowed to commercial and industrial users who have several buildings in one enterprise at one location, but these customers are not engaged in resale or redistribution. Some other customers who are engaged in resale or redistribution continue on a combined billing basis when that practice was established before 1950. However, the same privilege is extended to buildings constructed by the Authority before that time. Rider 18 forbids resale and redistribution in all buildings to be constructed in the future, whether owned privately or by the Authority. We do not believe that this constitutes unjust discrimination against the Authority.

The Authority also contends that the Commission's order is not supported by the necessary findings of fact and is therefore unlawful. Its position is that Rider 18 rescinds a prior Commission order finding it "not unreasonable" to exclude public low-rent housing projects from the Rider 12 prohibition of resale and redistribution, and that the prior order may not be rescinded under section 67 of the act (Ill. Rev. Stat. 1959, chap. 111⅔, par. 71) without a finding that the findings on which the earlier order was based were erroneous, that conditions have changed in the intervening period, or that a mistake of law has been made. *Central Northwest Business Men's Ass'n* v. *Commerce Com.* 337 Ill. 149; *Black Hawk Motor Transit Co.* v. *Commerce Com.* 398 Ill. 542.

We do not believe that the cited cases require the formality of a recital that the prior order was erroneous. The re-

quirement of findings of fact is designed to facilitate judicial review by showing the grounds for a Commission order. Where the order rescinds a prior order, we believe that it is clear enough that the old findings were erroneous, that circumstances have changed in the intervening period, or that an error of law was made. Furthermore, the Commission did not rescind a prior order in this case, but rather approved a revision of the rate structure as it is empowered to do by section 36 of the act. (Ill. Rev. Stat. 1959, chap. 111⅔, par. 36.) In such proceedings, only the reasonableness of the new rate, not that of the old, is at issue. (*Antioch Milling Co.* v. *Public Service Co. of Northern Illinois*, 4 Ill.2d 200, 210.) Findings regarding the earlier rider would have been surplusage. *Produce Terminal Corp.* v. *Illinois Commerce Com.* 414 Ill. 582, 596-97.

The Authority argues, finally, that the underlying prohibition of redistribution contained in Rider 18 and in the Commission's order is arbitrary and unreasonable. It takes the position that while resale may be condemned as diverting to the landlord profit that should go to the utility, there is no evidence in the record justifying a similar treatment of redistribution. Edison and the Commission reply that the record shows the redistribution would have the same adverse and discriminatory impact on Edison's rates and rate-payers as resale, and that in any case the Authority was engaged in resale, not redistribution.

Prohibition of resale prevents property owners from making a "middle man" profit on the sale of electricity. When electricity is redistributed without profit, this undesirable characteristic of a resale is of course not present. But redistribution involves the possibility that tenants in large apartment or office buildings may obtain electricity at a lower unit cost than persons living in single-family homes or tenants in small buildings, and the possibility that some tenants may pay for less electricity than they use, while others pay for more. Prohibition of redistribution to elimi-

nate these inequalities is therefore permissible. The fact that redistribution is not a common practice at this time is not determinative, because the Commission may act to prevent the growth of an undesirable practice before it becomes widespread.

For the reasons stated above the judgment of the circuit court is affirmed.

*Judgment affirmed.*