THE CITY OF HURST, Plaintiff-Appellee, *v.* THE ILLINOIS COMMERCE COMMISSION, Defendant-Appellant.

Fifth District   No. 83—237

Opinion filed December 23, 1983.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos, Special Assistant Attorney General, and James E. Weging, Assistant Attorney General, of counsel), for appellant.

James R. Zimmer, of Carbondale, for appellee.

JUSTICE KARNS delivered the opinion of the court:

The Illinois Commerce Commission appeals from the judgment of the circuit court of Williamson County setting aside an order of the Commission which established increased wholesale water rates for Cities Water Company's service area which includes the city of Hurst. The Commission appeals from the final order of the circuit court entered on March 3, 1983, and the denial of its petition for clarification or reconsideration on March 25, 1983. The circuit court set aside the Commission's order in Commission Docket No. 78–0527.

On October 3, 1978, Cities Water Company (Company) filed a revised rate schedule with the Commission proposing to increase rates for general water service in the Royalton area and to increase the wholesale water rate to the municipalities of Hurst and Bush effective November 4, 1978. The proposed rates were not put into effect but were suspended by the Commission to September 2, 1979, pending hearings. Notice required by law and the rules of the Commission was given.

Several hearings followed. On January 18, 1979, the initial hearing commenced. Before the examiner two persons appeared on behalf of the Commission. Nothing of substance was decided nor any evidence taken. The examiner merely continued the cause, noting that the village of Royalton had intervened.

Subsequent hearings were held on April 25, 1979, and June 18, 1979. The transcripts of those hearings contain testimony of Francis J. Coyle, president and chairman of the board of the Company, Seymour Golden, a certified public accountant appearing on behalf of the Company, George Henton, an accountant in the accounts and finance section of the Commission, and Thomas R. Stack, a registered professional engineer in the water engineering section of the Commission. It is evident from the voluminous record of transcripts and exhibits certified by the Commission that extensive evidence was presented before the Commission. Indeed, the Commission's initial order reflects the exhaustive nature of the hearings by listing the following subheadings: "Nature of Respondent's Operations," "Present Tariff," "Proposed Tariff," "General Water Service," "Wholesale Service," "Test Year," "Original Cost Rate Base," "Operating Revenues, Expenses

and Income," "Rate of Return," and "Cost of Capital Computation." Each subsection of the initial order contains meticulously detailed findings and conclusions.

The order was entered on August 22, 1979. The Commission rejected the Company's proposed revised rate schedule but ordered it to file a revised schedule conforming specifically to the rates and conditions of service attached to the order. The Commission found:

"Little if any direct testimony relating to a fair and reasonable return is contained in the record of this case. Nonetheless, this Commission is charged with the responsibility of establishing rates which are just and reasonable to the customers of Respondent's water utility and at the same time provide an opportunity for the investors of the Company to earn a fair and reasonable return on the investment for the risks assumed. ***

While it is difficult for the small utility to prevent deterioration of its financial viability under present economic conditions, it is necessary that needed rate relief be anticipated and sought by management before circumstances result in an inability to provide adequate and safe utility service.

This Company, as is true with many smaller utilities, does not have a capital structure which may be subjected to the same rationale applicable to larger utilities in the determination of a fair and reasonable return on debt and equity components." (*Cities Water Co.*, Ill. Com. Com., No. 78—0527, filed Aug. 22, 1979, at 5.)

The existing and proposed rates were both subjected to rigorous analysis, enabling the Commission to conclude:

"Under present rates pro forma operating income of $855 would reasonably be expected to result in a return of less than 4% on original cost rate base approved herein; such amount of operating income and the resultant return is insufficient, and unreasonable. The rates which produced such results should be permanently cancelled and annulled and the existing rate structure revised.

Under proposed rates pro forma operating income of $25,974 would reasonably be expected to result in a return of more than 38%; such amount of operating income and the resulting return is excessive and the rates proposed by Respondent in its tariff filing of October 3, 1978, should also be permanently cancelled and annulled." (*Cities Water Co.*, Ill. Com. Com., No. 78—0527, filed Aug. 22, 1979, at 5.)

The Commission consequently established a rate structure between

the extremes:

> "After examination of the Company's present and proposed rate structure and the evidence relating thereof, the Commission is of the opinion that the Staff engineer's proposed rate structure as shown by Staff Exhibits 9, 10, 11 and 12 should be implemented. The Commission is of the opinion that the existing wholesale rate does not recover the appropriate portion of the expenses properly allocable to cost of providing such service, as shown by Staff Exhibits 9 through and including 12.
> \*\*\*
> The Commission is of the opinion that the Staff engineer's methodology is acceptable for the purpose of restructuring of the rate schedule of the Company." *Cities Water Co.*, Ill. Com. Com., No. 78—0527, filed Aug. 22, 1979, at 2-3.

The Commission observed, "The rates set forth in Appendix A, attached hereto, were prepared as proposed by the Water Engineering Staff member, incorporating the proposed rate structure, and computed to produce operating revenue sufficient to obtain the operating results approved hereinabove." (*Cities Water Co.*, Ill. Com. Com., No. 78—0527, filed Aug. 22, 1979, at 6.) Finally, the Commission, having given due consideration to the entire record, was of the opinion and found:

> "(11) operating income of $10,010 will enable the Company to meet its existing financial obligations, pay normal operating expenses and result in a fair and reasonable overall [9.08%] return on the Company's capital structure and a fair and reasonable return to the investors of the Company; \*\*\*." *Cities Water Co.*, Ill. Com. Com., No. 78—0527, filed Aug. 29, 1979, at 8.

The revised schedule adopted authorized the Company to increase its wholesale water rate to Hurst from $0.57 to $0.76 per thousand gallons. It was effective August 24, 1979, but was later suspended when on September 17, 1979, Hurst filed a petition for rehearing. Rehearing was granted and the initial hearing on rehearing commenced December 4, 1979. A subsequent hearing was held on January 4, 1980.

The Commission's order on rehearing indicates the procedural posture:

> "The Examiner adopted the entire record of this case into the record for purposes of Rehearing and all parties were provided with an opportunity to cross-examine all witness [*sic*] on all matters concerning their previous testimony and exhibits.

The parties were also provided with an opportunity to present additional testimony on all issues." (*Cities Water Co.*, Ill. Com. Com., No. 78—0527, filed Jan. 30, 1980, at 2.)

The Commission's order on rehearing establishes that careful consideration was given to Hurst's objections and arguments. Detailed findings and analysis accompanied the Commission's examination of Hurst's case. After addressing and disposing of Hurst's arguments and having examined the entire record the Commission, on January 30, 1980, concluded that the opinions and order of August 22, 1979, were "supported by substantial evidence" and that the record was "adequate to sustain the conclusion reached." (*Cities Water Co.*, Ill. Com. Com., No. 78—0527, filed Jan. 30, 1980, at 4-5.) Hurst's prayer for relief was denied and the order of the Commission of August 22, 1979, was allowed to remain in full force and effect.

Two weeks later, the city of Hurst appealed to the circuit court pursuant to section 68 of "An Act concerning public utilities" (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 72) (hereinafter cited as the Public Utilities Act or the Act), "for the purpose of having the reasonableness and lawfulness of such Orders and Decisions inquired into and determined." On April 22, 1980, the circuit court ordered that the wholesale metered rates of the Company approved by the Commission effective August 24, 1979, be stayed for the city of Hurst pending the decision on appeal to the circuit court.

The circuit court's record sheet shows that briefs were submitted by both parties in August and September of 1980. The very next entry was made 2½ years later and does not indicate any interim proceedings or dispositions. The handwritten entry reads as follows:

"3-3-83 Order of Commerce Commission for rate increase is hereby stricken. Copy & send. No order necessary. Close file."

The record sheet also contains the following entry:

"3-25-83 Motion for reconsideration denied. Order amended to read as follows: Order of Commerce Commission is set aside w/a [*sic*] finding finding [*sic*] that order of Commerce Commission was based on insufficient evidence and is unreasonable and unjust. Motion for stay pending appeal denied."

The Commission brings this appeal arguing that its orders of August 22, 1979, and January 30, 1980, are proper and should have been affirmed by the circuit court. The Commission also challenges the circuit court's exercise of authority as being outside the scope of section 68 of the Act. We granted the Commission's motion for stay of the orders of the circuit court pending this appeal.

■■■ "[The Illinois Commerce Commission] is a legislative agency,

created for the purpose of applying numerous details of regulatory police power over public utilities." (*Illinois Commerce Com. v. New York Central R.R. Co.* (1947), 398 Ill. 11, 16, 75 N.E.2d 411, 414.) "The legislature has vested in the Commerce Commission the exclusive functions of fixing rates of public utilities which will be just and reasonable and produce a fair return upon the property used and employed in the public service." (*Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 48, 25 N.E.2d 482, 492.) "Orders of the commission are entitled to great weight, for they arise out of the deliberations of its members, who are much better qualified to interpret the testimony and charts of specialists and technicians. We will not set aside a commission order unless it is arbitrary or unreasonable or in clear violation of a rule of law." (*South Chicago Coal & Dock Co. v. Illinois Commerce Com.* (1937), 365 Ill. 218, 225, 6 N.E.2d 152, 155.) "The findings and conclusions of the Commission on questions of fact shall be held prima facie to be true and as found by the Commission; ***. *** [O]rders or decisions of the Commission shall be held to be prima facie reasonable, and the burden of proof upon all issues raised by the appeal [to the circuit court] shall be upon the person or corporation appealing from such *** orders or decisions." (Ill. Rev. Stat. 1979, ch. 111⅔, par. 72.) "When the sufficiency of the evidence to support an order of the commission is questioned the order will not be set aside unless it is clearly against the manifest weight of the evidence." (365 Ill. 218, 225, 6 N.E.2d 152, 155.) "[I]f from any reasonable view of the evidence the commission's order rests on a reasonable and substantial basis and does not infringe any of the constitutional rights of the parties it should be sustained." (*Illinois Commerce Com. v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1923), 309 Ill. 165, 170, 140 N.E. 868.) "The court should not usurp legislative or administrative functions by setting aside a legislative or administrative order on its own conception of the wisdom of it. *** To reverse and set aside an order on the ground that it is unreasonable it must be an arbitrary action, not resting on a reasonable basis for the exercise of the discretionary powers of the commission." (*Illinois Commerce Com. v. Chicago & Eastern Illinois Ry. Co.* (1928), 332 Ill. 243, 249, 163 N.E. 664.) "Upon an appeal from an order of the Commission the circuit court is restricted in the exercise of its powers, including the orders it may enter, to those expressly delegated by statute. (*Thompson v. Illinois Commerce Com.* (1953), 1 Ill. 2d 350, 115 N.E.2d 622.) The only issue presented to the circuit court is the reasonableness and lawfulness of the Commission's order, upon which the court's inquiry is confined to the jurisdiction of the Com-

mission, the sufficiency of the evidence, and the preservation of constitutional rights. (*Thompson.*) \*\*\* If the order of the Commission is lawful and reasonable it must be confirmed; if it is not, it must be set aside. *Thompson.*" *Illinois Commerce Com. v. Holiday Utilities Corp.* (1983), 119 Ill. App. 3d 50, 54.

■ ■ We must determine whether the circuit court erred in finding that the Commission's orders were based on insufficient evidence. (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 73.) The burden of proof on all issues raised by the appeal was on Hurst. (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 72.) We conclude from the record before us that the Commission's orders are supported by substantial evidence and that the record is adequate to sustain the conclusion reached on its own rehearing. We therefore do not believe the circuit court was justified in finding as it did. For the circuit court to "strike" the Commission's order, close the file, deny a motion for clarification, and finally conclude without elaboration that the Commission's order was based on "insufficient evidence," amounted to an abuse of discretion in the exercise of its statutory appellate jurisdiction. This is especially true when one considers the fact that the Commission annulled the previous rates and the effect of the circuit court's judgment was to reestablish a rate determined by the Commission to be insufficient, unreasonable, and unjust. Apart from the inquiry into whether the circuit court impermissively judicially performed a legislative function (see *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1973), 55 Ill. 2d 461; *Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 25 N.E.2d 482), we do not believe the action was proper. The record establishes a long history of the Company's financial difficulties and discloses that for many years the Company has operated at a loss. The Commission found that the existing rates did not provide the Company with sufficient operating income, did not recover the appropriate portion of expenses allocable to the cost of providing service, and were unjust and unreasonable. Hurst has never taken issue with the inadequacy of the lower rates. Hurst has never challenged the Commission's findings that the lower rate left the Company with insufficient operating income and rate of return. We cannot permit, nor do we think the circuit court should have permitted, the denial of a rate increase *in toto.*

Hurst's principal position on this appeal is that the findings of the Commission are not based upon "legal, acceptable, proper and substantial evidence in the record" and particularly that there is no "legal, acceptable, proper and substantial evidence of the existence of and original cost of the utilities property upon which to determine op-

erational costs for rate making purposes." Hurst alleges that the books and records of the Company taken as evidence and used by the Commission constitute hearsay evidence that should have been subjected to the strict admissibility requirements of hearsay evidence generally. Further, Hurst alleges that the evidence that was taken fails to show that the Company's books and records accurately reflect the present existence and condition of Company assets upon which to base a fair and reasonable rate increase since the Commission relied on an inventory and appraisal of Company assets dating back to 1956.

■ "In the conduct of any investigation, inquiry or hearing neither the Commission nor any commissioner or hearing examiner shall be bound by the technical rules of evidence, and no informality in any proceeding or in the manner of taking testimony before the Commission, any commissioner or hearing examiner of the Commission shall invalidate any order, decision, rule or regulation made, approved, or confirmed by the Commission." (Ill. Rev. Stat. 1979, ch. 111⅔, par. 64.) In the instant case, the Commission, on rehearing, observed that the Company is required to maintain its records in accordance with the provisions of General Order 183, "Uniform System of Accounts For Water Utilities," and file annual reports with the Commission. The examiner took administrative notice of such annual reports for the years 1974 through 1978, found that the books and records of the Company were in substantial compliance with General Order 183, and found that the books, records and annual reports disclosed the activity in the plant accounts of the Company. Hurst presented no evidence that the examiner should not have accepted this evidence. We agree with the Commission's conclusion that it was "justified in placing reliance upon such documentary evidence prepared and maintained during the normal course of the Company's operations, especially when subjected to examination by a Commission Staff member." To this extent and without deciding whether the evidence is hearsay, we believe McCormick on Evidence is instructive:

> "Many reasons support the open admission of hearsay and other legally incompetent evidence in administrative hearings. Foremost among them is the fact that the exclusionary rules do not determine the probative value of the proffered evidence. Professor Davis, the leading proponent that hearing officers should make no distinction between hearsay and nonhearsay evidence, makes the point this way.
>
> '[T]he reliability of hearsay ranges from the least to the most reliable. The reliability of non-hearsay also ranges from the least to most reliable. Therefore the guide should be a judg-

ment about the reliability of particular evidence in a particular record in particular circumstances, not the technical hearsay rule with all its complex exceptions.'

To require that a trial examiner refuse to admit hearsay makes no sense where there is no jury to protect and the trier of fact is equally exposed to the evidence whether he admits or excludes it. *** Hearsay, of course, is not subject to current, in-court cross-examination, but that limitation affects the weight the evidence carries, not its admissibility." (McCormick, Evidence sec. 350, at 841-42 (2d ed. 1972), cited in *Nussbaum Trucking Inc. v. Illinois Commerce Com.* (1981), 99 Ill. App. 3d 741, 748, 425 N.E.2d 1229, 1233.)

We conclude that Hurst's objection regarding the hearsay character of the evidence presented is without merit.

Hurst's position with regard to the Company's rate base had been presented to the Commission on its rehearing. The Commission addressed Hurst's argument that "in arriving at the original cost rate base of the Company, the Commission failed to verify and/or require Respondent to provide documentary evidence and testimony relating to the cost of the Company's plant in service account." The Commission responded by observing that it had previously taken administrative notice, on notice of the parties, of the order and order on rehearing entered in Commission Docket Nos. 42873 (1956) and 43001 (1957). Those orders were entered pursuant to the Company's proposed revised rate schedule submitted to the Commission in 1956. In 1956, the Commission had found the original cost of the Company's property used and useful in furnishing water service to be $73,000 undepreciated and $50,500 depreciated at December 31, 1955, for rate-making purposes. The city of Hurst was an active party in those hearings and in fact appealed at that time to the circuit court of Williamson County. The appeal was not prosecuted. We agree with the Commission's order on rehearing that "the City of Hurst is bound by the findings of the Commission's original cost determinations ***." (*Cities Water Co.*, Ill. Com. Com., No. 78—0527, filed Jan. 30, 1980, at 3.) " 'Original cost' *** means the cost of such property to the person first devoting it to public service." (General Order 183, "Uniform System of Accounts for Water Utilities," at 2 (1962).) As such, it is a precise historical figure that once having been established is not subject to change. This is especially true as to Hurst who had an opportunity to contest the 1956 original cost finding but failed to prosecute its appeal relating thereto. See Ill. Rev. Stat. 1955, ch. 111⅔, par. 72.

It is apparent that original cost was but one factor considered

by the Commission in arriving at the original cost rate base. Adjustments were made for depreciation and amortization, construction work in progress, working capital allowance, and materials and supplies. The Commission determined that the test year 1978 original cost rate base, which was derived from figures adjusted in a 1976 rate case between the same parties, was the "value" of the Company's property dedicated in providing service to its customers. In this case, the Commission amassed cumulative calculations from several rate cases in reaching the conclusion that a 9.08% return is fair and reasonable. The Commission may properly take administrative notice of its own findings and orders.

The judgment of the circuit court is reversed, and pursuant to the power vested in us by Rule 366(a) (87 Ill. 2d R. 366(a)), we affirm the orders of the Commerce Commission of August 22, 1979, and January 30, 1980.

Reversed; order of commission affirmed.

HARRISON, P.J., and JONES, J., concur.