GENERAL MILLS, INC., Petitioner-Appellant, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.

First District (5th Division)   No. 1—89—0491

Opinion filed July 27, 1990.

716

Eric Robertson and Edward C. Fitzhenry, both of Lueders, Robertson & Konzen, of Granite City, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Amy S. Botschner, Special Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Commerce Commission.

Sidley & Austin, of Chicago (Sarah J. Read and Anastasia M. Polek, of counsel), for respondent Commonwealth Edison Company.

JUSTICE LORENZ delivered the opinion of the court:

General Mills, Inc. (General Mills), appeals from an order of the Illinois Commerce Commission (Commission) denying its complaint against Commonwealth Edison Company (Edison). We address the issue of whether the Commission properly found Edison's rate schedule was ambiguous on its face and properly examined other documents to construe the rate schedule. For the following reasons, we affirm.

General Mills filed a complaint with the Commission on October 2, 1987, against Edison under section 9—252 of the Public Utilities Act (Ill. Rev. Stat. 1987, ch. 111⅔, par. 9—252) alleging that Edison charged General Mills an excessive and unjustly discriminatory rate for electric service from March 8, 1985, to at least December 1, 1986. General Mills alleged it was a manufacturer served under Edison's "Rate 6L-Large General Service" (Rate 6L). On November 29, 1984, a revised version of Rate 6L became effective and provided in part:

> "This rate is applicable to (1) any commercial, industrial, or governmental customer with a maximum demand of 1,000 kilowatts or more in three of the 12 months preceding the billing month, (2) successors to customers served under these charged immediately prior to the date of succession whose estimated maximum demands meet the demand requirements in clause (1) above, (3) new customers whose estimated maximum demands meet the demand requirements in clause (1) above, and (4) any customer previously billed hereunder pursuant to clauses (1) or (2), except as otherwise provided below.
>
> If a customer at one time was served pursuant to (1) above on Large General Service—Time of Day and has a maximum demand which has not exceeded 200 kilowatts in any month of the twelve month period preceding the billing month, such customer may elect, in written application to the Company, to be served on Rate 6, General Service. Rate 6L, Large General Service—Time of Day, shall not again be applicable until such

customer qualifies for such rate under clause (1) above.

The Large General Service—Time of Day charges of this rate shall not be applicable to customers or their successors with electric space heating taking service under the Heating with Light provisions of Rider 25 prior to November 23, 1977, except upon written application by the Customer to the Company. Except as stated above, the Large General Service charges shall apply to these customers."

The rate schedule provided energy charges for two types of service: "Large General Service—Time of Day" and "Large General Service." Under "Large General Service—Time of Day" (time-of-day charge), a customer was charged dependent on the time of day the service was provided. The charge was higher during peak periods than during off-peak periods. Under "Large General Service" (non-time-of-day charge), a customer was charged dependent on the number of kilowatt-hours supplied in a month. The charge decreased when the number of kilowatt-hours supplied increased during the month. The rate schedule also provided that it was issued pursuant to the Commission's order entered on July 12, 1984, in case No. 83—0537, and its special permission order No. R—18552, entered on November 14, 1984.

General Mills alleged that under the rate schedule neither the time-of-day charge nor the non-time-of-day charge was restricted to a certain type of customer. In a letter to Edison dated March 8, 1985, General Mills requested a transfer from the time-of-day charge to the non-time-of-day charge for its West Chicago plant. In a similar letter dated March 26, 1985, General Mills made the same request for its South Chicago plant. Edison rejected the requests and, as a result, General Mills filed a complaint seeking reparation in the amount of $700,000 plus interest.

Edison answered the complaint denying the material allegations and raised three affirmative defenses, only one of which is relevant here. Edison asserted that the version of Rate 6L at issue was filed in response to the Commission's previous order to include a non-time-of-day charge for "Heating with Light" customers. Because General Mills was not a "Heating with Light" customer, it was not entitled to the non-time-of-day charge.

For a hearing before the Commission on the complaint, General Mills and Edison stipulated to the following facts. At all relevant times, General Mills was charged for electric service under the time-of-day energy charge of Rate 6L. Beginning November 29, 1984, Rate 6L provided for both time-of-day and non-time-of-day energy charges.

On March 8, 1985, and March 26, 1985, General Mills requested a transfer from the time-of-day charge to the non-time-of-day charge under Rate 6L. Edison rejected those requests.

After a hearing, the Commission entered an order denying General Mills' complaint. The Commission found Rate 6L was ambiguous on its face regarding the applicability of the two sets of energy charges. Although the rate schedule clearly stated that the time-of-day charge was not applicable to certain "Heating with Light" customers, it did not clearly state which charge applied to other Rate 6L customers. Further, Rate 6L did not state that those other customers had an option to choose between time-of-day and non-time-of-day charges. On the day the rate schedule went into effect, General Mills and other similarly situated customers were charged under the existing time-of-day charge. The Commission reasoned that if customers, other than certain "Heating with Light" customers, had an option between time-of-day and non-time-of-day charges under the rate schedule, a mechanism would have had to be in place for customers to make that selection at the time Rate 6L became effective. Because Rate 6L did not contain such a mechanism, the Commission found that it was ambiguous.

In its order the Commission stated, "[w]hen a question of tariff interpretation arises other documents bearing on the meaning of the tariff can be examined." Therefore, to resolve the ambiguity the Commission examined the previous version of Rate 6L and its previous orders requiring Edison to file the rate schedule in question. Prior to November 29, 1984, Rate 6L only provided a time-of-day charge. The rate schedule in question was the result of orders dated July 12, 1984, and July 17, 1984, where the Commission directed Edison to revise Rate 6L to include a non-time-of-day charge for certain "Heating with Light" customers. In its order in the present case, the Commission found that under its previous orders it did not intend to extend the non-time-of-day charge to customers other than qualified "Heating with Light" customers. Because General Mills was not a "Heating with Light" customer, it was not entitled to the non-time-of-day charge. Accordingly, the Commission denied General Mills' complaint and it now appeals.

OPINION

■ Under the Public Utilities Act, all rates for public utilities must be just and reasonable and every public utility must file schedules of rates with the Commission. (Ill. Rev. Stat. 1987, ch. 111²/₃, pars. 9—101, 9—102.) A rate is defined, in part, as any schedule or

tariff of a public utility. (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 3—116.) If a complaint is made under section 9—252 and the Commission finds a public utility has charged an "excessive or unjustly discriminatory amount for its product, commodity or service," the Commission may order the utility to make due reparation to the complainant. Ill. Rev. Stat. 1987, ch. 111²/₃, par. 9—252.

██ ▌ On review, the Commission's findings on questions of fact are *prima facie* true, the Commission's orders are *prima facie* reasonable, and the party appealing from an order has the burden of proof on all issues raised. (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 10—201(d).) However, the Commission's determination of a question of law is not binding on review. (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1989), 136 Ill. 2d 192.) An appellate court can reverse the Commission's order if it finds that the Commission's findings were not supported by substantial evidence, the Commission did not have jurisdiction to enter the order, or the Commission violated the Federal or State constitution or laws. Ill. Rev. Stat. 1987, ch. 111²/₃, par. 10—201(e)(iv).

Initially, General Mills contends that the Commission's order should be reversed because Rate 6L was not ambiguous and must be enforced according to its terms, citing *Western Transportation Co. v. Wilson & Co.* (7th Cir. 1982), 682 F.2d 1227 (common carrier and shipper are bound to the terms of an unambiguous tariff).

██ Although we have not found an Illinois case that has reviewed an order of the Commission finding that a utility rate schedule was ambiguous, we agree with General Mills that whether the rate schedule was ambiguous was a question of law and, therefore, this court is not bound to the Commission's finding. *Cf. Penn Central Co. v. General Mills, Inc.* (8th Cir. 1971), 439 F.2d 1338 (interpretation of common carrier's tariff is ordinarily a question of law); *Coca-Cola Co. v. Atchinson, Topeka & Santa Fe Ry. Co.* (5th Cir. 1979), 608 F.2d 213 (tariff has the force of law and it is interpreted as a question of law similarly to a statute).

██ Rate 6L provided both time-of-day and non-time-of-day charges. However, Rate 6L did not clearly state which charge applied to which types of customers. The only express statement was contained in the third paragraph of the applicability section:

> "The [time-of-day] charges of this rate shall not be applicable to customers or their successors with electric space heating taking service under the Heating with Light provisions of Rider 25 prior to November 23, 1977, except upon written application by the Customer to the Company. Except as stated above, the

[non-time-of-day] charges shall apply to these customers."
From this paragraph, it is clear that "Heating with Light" customers could not be served under the time-of-day charge unless they applied for such service with Edison. Without such an application, "Heating with Light" customers were served under the non-time-of-day charge. Only "Heating with Light" customers were given an option between the two types of charges. Rate 6L did not further provide whether time-of-day or non-time-of-day charges applied to "non-Heating with Light" customers. Because it was unclear under which service "non-Heating with Light" customers would be charged, Rate 6L was ambiguous.

General Mills argues that the Commission created an ambiguity in Rate 6L by first reviewing its previous orders which directed Edison to file the version of Rate 6L involved in this appeal and then determining that Rate 6L was ambiguous. We disagree with General Mills' interpretation. In its order, the Commission stated it found Rate 6L was ambiguous on its face and explained the specific provisions in Rate 6L that it found were ambiguous. Further, the Commission stated that its previous orders were reviewed to resolve the ambiguity rather than to determine whether an ambiguity existed.

■ General Mills argues that if Rate 6L was ambiguous, it should have been resolved against Edison, which drafted the rate schedule, citing *Bolin Drive-A-Way Co. v. United States* (Ct. Cl. 1960), 283 F.2d 697 (ambiguity in tariff should be resolved against common carrier). However, as both Edison and the Commission contend, such a construction is not required where the rate schedule can be construed consistently with its intent. *Cf. Penn Central*, 439 F.2d at 1341 (tariff should not be strictly construed against common carrier when there is "a permissible and reasonable construction which conforms to the intentions of the framers of the tariff").

If the Commission's interpretation of an electric rate is not unreasonable, it will not be overturned on appeal. (*Chicago Housing Authority v. Illinois Commerce Comm'n* (1960), 20 Ill. 2d 37, 169 N.E.2d 268.) In *Chicago Housing Authority*, the Commission approved Edison's proposed rate change and rejected the Chicago Housing Authority's contention that it should be charged under a governmental rate rather than a residential rate for the electric service it provided to its tenants. The supreme court affirmed the Commission's ruling because "the Commission did not act arbitrarily or unreasonably." *Chicago Housing Authority*, 20 Ill. 2d at 42, 169 N.E.2d at 271.

■ In construing the rate schedule in the present case, the Commission properly reviewed the previous version of Rate 6L and its

previous orders directing Edison to file the version of Rate 6L which is at issue in this case. (See *City of Hurst v. Illinois Commerce Comm'n* (1983), 120 Ill. App. 3d 354, 458 N.E.2d 568 (the Commission can properly take administrative notice of its own findings and orders).) The Commission found that it only intended for Edison to provide the non-time-of-day charge to certain "Heating with Light" customers. The Commission concluded that the non-time-of-day charge did not apply to General Mills because it was not a "Heating with Light" customer. This construction was reasonable because it was consistent with the Commission's intent to provide the non-time-of-day charge to "Heating with Light" customers.

For the foregoing reasons, the Commission's order denying General Mills' complaint for reparation is affirmed.

Affirmed.

COCCIA, P.J., and MURRAY, J., concur.