(No. 36017.—

THE CITY OF ST. CHARLES *et al.*, Appellants, *vs.* THE ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

*Opinion filed January 20, 1961.*

SOLFISBURG, J., took no part.

EDWARD R. JOHNSTON, ANAN RAYMOND, EDWARD H. HATTON, KENNETH J. BURNS, JR., and HOWARD R. BARRON, all of Chicago, (THOMPSON, RAYMOND, MAYER, JENNER & BLOOMSTEIN, of counsel,) for appellants.

WILLIAM L. GUILD, Attorney General, of Springfield, and HARRY R. BEGLEY, Special Assistant Attorney General, of Chicago, for appellee Illinois Commerce Commission; and ISHAM, LINCOLN & BEALE, ARTHUR C. GEHR, RICHARD D. CUDAHY, and MAX SWIREN, all of Chicago, for appellee Commonwealth Edison Company.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The cities of St. Charles, Naperville, Batavia, Geneva and Rock Falls have appealed from an order of the circuit court of Cook County confirming an order of the Illinois Commerce Commission which allowed an increase in rates for electric service to them from the Commonwealth Edison Company. The appeal is pursuant to section 69 of the Public Utilities Act. Ill. Rev. Stat. 1959, chap. 111⅔, par. 73.

In July 1957, Edison filed revised rate schedules under section 36 and petitions for modification of certain rate contracts under section 41 of the Public Utilities Act. (Ill. Rev. Stat. 1957, chap. 111⅔, pars. 36, 41.) These proposed rate and contract changes were intended to provide an increase of approximately $26,435,000 in Edison's gross revenue. Proceedings on the various filings were consolidated for hearing before two examiners setting *en banc*. Thirty-two cities, villages and municipal corporations, 21 associations and corporations, individual users and other parties in interest entered their appearances.

Extensive hearings were held and the record before the

commission consisted of more than 5800 pages of testimony and 170 exhibits. On the basis of this record the Commission made findings with respect to the depreciated original cost, the depreciated reproduction cost, rate base, working capital, fair value, rate of return, operating revenues and expenses, taxes, and the classification of rates and rate schedules. A revision in certain rates not here material was ordered and as revised the Commission found the rates to be just and reasonable and ordered them to be made effective. This action constituted a determination that Edison was properly entitled to the added revenues which it sought in the proceedings and that the rate schedule as modified was an appropriate method of providing such added revenues. The increase in rates was general and will result in an average increase of charge of approximately 7.3% to almost all of Edison's some 1,900,000 customers.

The five cities purchase electric energy from Edison for redistribution to ultimate consumers within their respective service areas. They, together with eleven other reselling customers of Edison, are served under Rate 78. This rate has been closed to new customers since 1952 when the commission approved Edison's Rider 12 which forbids any customer from reselling electricity to third persons except where the practice was already established.

The five cities do not contend that the Commission erred in allowing an increase in revenue or in approving the form of rates with respect to all of the other customers of Edison. Their sole cause of complaint is that it is unreasonably discriminatory to serve them on the same rate classification with the other eleven resellers and that Edison should be required to provide a separate reselling rate classification for them, to the end that at least portions of the increased revenue allowed by the Commission should be obtained from customers other than the five cities.

Ten of the other 11 reselling customers of Edison have substantially smaller demands and usage than the five cities,

and in the main are submetering landlords, owners of apartment houses, stores and hotels, or similar businesses. One of the 11 is an institution with usage approaching that of the smallest of the five cities. Also, the load factor (average load expressed as a percentage of the peak load) is higher for the five cities than for the 11 customers except in the case of the institution. Delivery of electric energy to such other customers is at lower voltages directly usable by the ultimate consumers to whom they resell. The five cities, on the average, have substantially larger demands and usage, and purchase electric energy delivered from Edison's transformers at 2400 to 34,500 volts. The electric energy so purchased is then resold through electric distribution systems, including primary distribution lines at 2400 or 2400/4160 volts. These considerations would tend to make the unit cost of service to the five cities lower than the unit cost of service to the other 11 customers on Rate 78.

The five cities argue that, by reason of these considerations, they are entitled to a measurably lower charge for electric energy than the charge to the other 11 smaller customers. In this we think they are correct, but the record shows that Rate 78, as revised, does provide lower rates to the five cities than to the 11 smaller customers. Estimates of the effect of Rate 78, as revised, indicate that for the 12 months ended June 30, 1957, the five cities would pay an average of 1.16c per kwh, while the 11 smaller customers would pay an average of 1.56c per kwh. The unit charge for electric energy to the 11 smaller customers is thus some 34% higher than the unit charge to the five cities.

The difference between the unit charge to the five cities and the 11 small customers served on Rate 78 is accomplished by the block principle of price scheduling. Rate 78 utilizes a descending scale of charges as the demand for additional maximum load and energy increases. Adjustments of the charges on account of increased demand are

made as shown in the following table taken from the tariffs of Edison ("The Billing Demand" referred to is fixed by the highest 30 minutes demand established in each month) :

| | Kilowatts of Billing Demand for the Month |
|---|---|
| Demand Charge | |
| $2.10 per KW for the first | 200 |
| 1.90 per KW for the next | 800 |
| 1.70 per KW for all over | 1,000 |

| Energy Demand Net | Kilowatthours Supplied in the Month |
|---|---|
| 2.33c per KWH for the first | 6,000 |
| 1.30c per KWH for the next | 24,000 |
| 1.00c per KWH for the next | 70,000 |
| .75c per KWH for the next | 400,000 |
| .69c per KWH for all over | 500,000 |

Such two-part block rates are in general use by electric utilities for commercial and industrial customers which have many different kinds of individual demands for service.

The Commission considered the effect of the two-part blocking for the charges in Rate 78 and said in its opinion : "An argument was made on behalf of the Five Cities that the Five Cities ought not to be served on a rate, such as Rate 78, with other reselling customers where the Five Cities constituted the largest customers on the rate and otherwise varied in characteristics from the other reselling customers served on the rate. Serving both small and large customers under a single rate is not *per se* evidence of unreasonableness for rates may be designed, as block-type rates such as Rate 78 are, to accommodate both large and small users. In fact, Rate 78 is almost identical in form with present Rate 11, the monthly demand rate used by both small and large customers." The Commission also

found that the five cities experienced their system peak loads at the same time Edison experiences its system peak loads; that the average monthly coincidence factor (the coincidence between peak demand of the five cities and the peak demand on Edison's entire system) has risen each year since 1953; and, that Edison's proposals are consistent for large users, including the five cities, and are fair and reasonable.

The five cities contend, however, that these findings of the Commission did not pass on the issue of unlawful discrimination between the five cities and the 11 small customers classified together by Rate 78. It is said the Commission's findings do not even include the word "nondiscriminatory." These findings show that the Commission took into account the dissimilarities in load and service characteristics of the customers served under Rate 78 and concluded that the rate made reasonable adjustments in charges for such differences by utilizing the block principle of pricing.

"The requirement of findings of fact is designed to facilitate judicial review by showing the grounds for a Commission order." (*Chicago Housing Authority* v. *Commerce Commission*, 20 Ill.2d 37, 43—44.) The five cities questioned Rate 78 on the ground that it imposed discriminatory charges against them. The Commission was therefore required in this proceeding to make findings from which it would be proper to conclude that the five cities have not shown that the rate as applied to them was unreasonably discriminatory or unduly prejudicial, since it is only an unreasonable difference in rates between customers or classes of customers which violates section 38 of the Public Utilities Act. *Rockwell Lime Co.* v. *Commerce Com.* 373 Ill. 309, 319; *Illinois Central Railroad Co.* v. *Commerce Com.* 359 Ill. 563, 568; *Illinois Central Railroad Co.* v. *Commerce Com.* 342 Ill. 11, 20; *Atchison, Topeka & Santa Fe Railway Co.* v. *Commerce Com.* 335 Ill. 70, 100—101.

The approval of Rate 78 by the order indicates the Commission reached that conclusion, and the findings enumerated show how the Commission arrived at its conclusion. We are of the opinion that the findings of the Commission are adequate to enable the court to review the Commission's order.

The five cities next contend that even if the findings of the Commission are adequate on their face, the order should be reversed because the findings are without substantial foundation in the record. In this proceeding the five cities have the burden of establishing that Rate 78 as applied to them violated the prohibition against unreasonable preferences. (*City of Chicago* v. *Commerce Com.* 15 Ill.2d 11, 13; *Produce Terminal Corp.* v. *Commerce Com.* 414 Ill. 582, 598; *Chicago and E. I. Ry. Co.* v. *Commerce Com.* 343 Ill. 117, 124.) Thus, the substantive question here is whether the five cities have met the burden of showing that the differences in their characteristics and demands from those of the other customers on the rate warrant a greater difference in the charges to the two groups of customers. To establish the burden, the five cities contend that unreasonable discrimination results from the inclusion of them in the same rate classification with the 11 small customers. They argue that the only characteristic common to all customers proposed to be served under Rate 78 is that they are resellers.

A number of cases from other jurisdictions have been cited by the five cities for the proposition that the purchase of energy for resale is not in itself, and without more, a ground for common classification. We need not discuss those cases, since that principle is not applicable here. The block principle of pricing provides, in effect, a secondary classification with respect to the charges imposed by Rate 78 and thus takes into account factors other than the purpose for which used.

Section 32 of the Public Utilities Act (Ill. Rev. Stat.

chap. 111⅔, par. 32) specifies the basis for classification of customers. Under it any public utility with the consent and approval of the Commission may, as a basis for the determination of the charges made by it, classify its service according to the amount used, the time when used, the purpose for which used, and other relevant factors. When both the primary and secondary classifications of customers for the purpose of fixing charges under Rate 78 are considered, the basis of the classification is not only the purpose for which the service was used but also the amount used, the time when used, and other relevant factors. The mere inclusion of customers with dissimilar characteristics and demands on the same rate classification does not result in any unreasonable prejudice or unlawful discrimination against such customers if there are differences in the charges within the class which properly give effect to such dissimilarities.

The five cities did produce evidence tending to show that the unit cost of service to the 11 small customers was higher than the unit cost of service to the five cities, but the quantum of this difference was not shown. The record also shows, however, that the average of the charges to the 11 small customers is approximately 34% higher than the average of the unit charges to the five cities. The Commission found that the differences herein mentioned were accommodated by the block principle of price scheduling adopted in Rate 78 and that the rate is just and reasonable. In our view the Commission, with its expert knowledge of the intricacies and complexities of utility rate making, was warranted in exercising its informed judgment in favor of upholding as reasonable the differences in rates complained of by the five cities. We are of the opinion that the five cities have not met the burden of showing that the differences between the charges to these groups of customers are unduly prejudicial or otherwise unreasonable.

For the reasons stated above the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. Justice Solfisburg took no part in the consideration or decision of this case.