DOMINIC F. SHORTINO et al., Indiv. and on Behalf of All Those Similarly Situated, Plaintiffs-Appellees, v. ILLINOIS BELL TELEPHONE COMPANY, Defendant-Appellant (Business and Professional People for the Public Interest, Intervenors-Plaintiffs).

First District (3rd Division) No. 1—88—1748

Opinion filed December 5, 1990.—Rehearing denied January 15, 1991.

Henry L. Mason III, Lisa A. Hausten, L. Bow Pritchett, and John C. Gockley, all of Chicago, for appellant.

Sidney Z. Karasik, Leonard E. Handmacher, and Seymour Schriar, all of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Defendant Illinois Bell Telephone Company (Illinois Bell), appeals from an order of the circuit court of Cook County which granted the motion of plaintiffs Dominic F. Shortino and Valerie Johnson, individually and on behalf of all those similarly situated (plaintiffs), for a permanent injunction on count I of their three-count class action complaint. Illinois Bell also appeals from an order granting plaintiffs' motion for summary judgment on the issue of damages as to count I. The summary judgment order created a Chicago class fund and ordered judgment in favor of the Chicago class and against Illinois Bell in the sum of $9,310,452.81. The order creating the class fund was later supplemented by an order which added $5,422,717 to the fund. Illinois Bell also appeals from the supplemental order. Counts II and III of the complaint are still before the trial court and are not a part of this appeal. We affirm.

Illinois Bell contends that (1) the trial court erred in ruling that Illinois Bell's procedure of recovering the municipal message tax on gross receipts from pay phones by charging monthly billed customers

was unjust and unreasonable; (2) the trial court erred in ruling that the "r" factor method of recovering the message tax expense from pay phone use was not a just and reasonable method; and that (3) Illinois Bell's constitutional rights would be violated if it were not allowed to recover message tax expenses pursuant to the procedure it advocates.

Plaintiffs, residents of the City of Chicago, filed a three-count class action complaint against Illinois Bell on March 12, 1985. The plaintiffs were certified as a class representing Illinois Bell customers located or residing in Chicago who, during the five-year period before the filing of the complaint, were surcharged for the City of Chicago message tax, based on gross receipts from coin-operated pay phones, which were spread to or loaded onto their own telephone bills in addition to their proportionate share of the tax on their own telephone use. Count I of the complaint alleged that Illinois Bell's revenues from pay phone customers are part of the gross receipts base upon which the Chicago message tax is imposed and that Illinois Bell has wrongfully contrived to free itself of the burden of that tax expense by the device of spreading the tax to monthly billed customers who routinely pay "additional charges" for the tax. The plaintiffs further alleged that "in effect all of Bell's Chicago customers, except its pay phone users, are required to pay an extra and illegal additional charge of the Municipal Utility Tax (MUT) to compensate Bell for what it fails to recover from its pay phone users."

In 1955, the Illinois legislature enacted a law which authorized municipalities to impose on utilities, at a rate not to exceed 5% of their gross receipts from local operation, a municipal occupation tax. For the telephone companies, the base of the tax is the gross receipts of such business originating within the corporate limits of the taxing municipality. (Ill. Rev. Stat. 1987, ch. 24, par. 8—11—2(1).) The City of Chicago subsequently adopted the Chicago message tax ordinance, which parallels the State statute and currently charges a tax rate of 5%. (Chicago Municipal Code §132—31 (1986).) At the same time, the Illinois legislature adopted an amendment to the Public Utilities Act (PUA), which permitted public utilities to recover through an additional charge to be shown separately on the utility bill to each customer any occupation tax imposed by a municipality. Ill. Rev. Stat. 1987, ch. 111⅔, par. 9—221.

The PUA provides in pertinent part:

"The additional charge authorized by Section 9—221 or Section 9—222 shall be made (i) in the case of a tax measured by gross receipts or gross revenue, by adding to the customer's

bill a uniform percentage to those amounts payable by the customer for intrastate utility service which are includible in the measure of such tax, *except, however, such method is not required where practical considerations justify a utility's use of another just and reasonable method of recovering its entire liability for such tax* \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 111⅔, par. 9—222.2.

Prior to recodification of PUA section 36(c) as section 9—222.2, effective January 1, 1986, this section of the Act provided:

"(c) The additional charge authorized by paragraph (a) or paragraph (b) shall be made in the case of a tax measured by gross receipts or gross revenue by adding to the customer's bill a uniform percentage to those amounts payable by the customer for intrastate utility service which are includable in the measure of such tax, *except, however, such method is not required where practical considerations justify a utility's use of another just and reasonable method of recovering its entire liability for such tax.* This paragraph is not intended to make any change in the meaning of this Section, but is intended to remove possible ambiguities, thereby confirming the intent of paragraphs (a) and (b) as they existed prior to the effective date of this amendatory Act of 1985." (Emphasis added.) (Pub. Act 84—126, eff. July 1, 1985.)

The above-emphasized portions of section 36(c) and section 9—222.2 were added to the PUA shortly after the filing of and presumably in response to the present case. The parties disagree as to the legislative intent behind both the emphasized amendment and the later deletion of the last sentence of former PUA section 36(c) when it was recodified as section 9—222.2.

In 1984, the Illinois Commerce Commission (ICC) instituted an investigative procedure to reconsider the propriety of Illinois Bell's practice of spreading the municipal message tax expense through the use of the "r" factor. The trial court noted that the ICC held no hearings into the past or present use of the "r" factor before rendering its decision. In its order of May 13, 1987, the ICC found that telephone companies face "practical difficulties" in recovering their tax liability from "sent-paid" coin and "sent-collect" calls. The ICC then ruled that the use of spreading to recover utility taxes "was and is clearly permissible." The ICC order provided:

"Since 1955, in accordance with procedures approved by the Commission, most major utilities, 'targeted' the amount of additional charges \*\*\* by imposing those \*\*\* charges on cus-

tomers whose receipts give rise to the utility tax liability being collected. Specifically, the utility recovers from each customer the exact amount of the utility's actual tax liabilities resulting from the taxable gross receipt received from that customer. Since 1955, in accordance with procedures approved by the Commission, telephone utilities have 'spread' the amount of additional charges *** Unlike gas and electric utilities, telephone utilities have a difference between their additional charge base and their tax base. Telephone utilities face practical difficulties in recovering their tax liability from sent-paid and sent-collect messages ***.

*If there was any question that the Commission was erroneously construing the legislative intent by approving both a 'traced' *** and a 'spread' methodology, all uncertainty was resolved by subsequent legislative enactments. Public Act 84—126 added Section 36(c) to the old Act ***. Corresponding Section 9—222.2 of the [new Act] contains the same provision regarding 'a utility's use of another just and reasonable method of recovering its entire liability for such tax.' The use of both the 'traced' or 'targeted' and the 'spread' methodology was and is clearly permissible. Moreover, since the propriety of their use is ascertainable on its face from the language of the old Act and new Public Utilities Act, any additional proceedings are unnecessary as the outcome is predetermined as a matter of law."* (Emphasis added.) ICC Investigative Proceeding No. 84—0082, May 13, 1987.

The trial court chose to disregard the ICC's validation of Illinois Bell's spreading methodology and found instead that section 9—222.2 of the PUA does not authorize Illinois Bell's continuous practice of spreading. The trial court found that section 9—222.2 does not by its terms sanction spreading, and that the method of spreading adopted by Illinois Bell is not "just and reasonable" because it discriminates against monthly billed customers without demonstrating any tangible difference or *quid pro quo* justifying charging monthly billed customers the municipal taxes generated by coin telephone users.

On September 9, 1986, the trial court granted plaintiffs' motion for summary judgment on the issue of liability as to count I of their complaint. On November 12, 1986, the trial court granted plaintiffs' motion for summary judgment on count I of their complaint on the issue of damages and created a Chicago class fund in the amount of $9,310,452.81. On May 11, 1988, the trial court granted plaintiffs' motion for permanent injunction enjoining Illinois Bell from its billing

practice of "spreading," *i.e.*, passing through to its monthly billed customers Bell's liability and expense for the Chicago message tax which Bell does not recover from its coin pay customers. On May 20, 1988, the trial court entered an order supplementing the class fund by an additional $5,422,717.

On appeal, Illinois Bell first contends that the trial court erred in ruling that its procedure of charging monthly billed customers to recover the municipal message tax on gross receipts from pay phone use was unjust and unreasonable. We disagree.

The plaintiffs' complaint alleged that the revenues from pay phone customers are part of the "gross receipts" base upon which the Chicago message tax is imposed and that Illinois Bell improperly charges the expense from such taxes to monthly billed customers in addition to their own proportionate share of the tax. Plaintiffs contend that monthly billed customers should pay only their fair and just proportional share of the tax. Plaintiffs further allege that Illinois Bell's practice of spreading the message tax expense, which it does not collect from pay phone users, to billed customers violates the PUA's prohibition against discrimination. (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 9—241.) The plaintiffs further contend that the amendment to section 9—222.2 of the PUA does not expressly describe, or even recognize by implication, "spreading" as one of the "practical" exceptions to a utility's generic duty to trace or target its municipal utility tax liability by a uniform percentage to all of its customers in a service area subject to a MUT. Plaintiffs therefore conclude that spreading is *prima facie* discriminatory because it benefits one class of Illinois Bell customers (coin pay phone users) at the expense of another class (monthly billed customers).

Illinois Bell responds that the first clause of section 9—222.2 expressly authorizes the "tracing" method used by gas and electric companies. It further contends that the second clause, which allows a just and reasonable alternative to tracing, authorizes the use of spreading to recover message tax expenses which cannot be recovered from the customer whose utilization of telephone services gave rise to the revenue subject to the tax. Bell also posits that its interpretation of section 9—222.2 does not conflict with the PUA's prohibition against discrimination because both sections require rates and charges that are just and reasonable. Bell further believes that because the "r" factor method used to calculate the additional charges has the precise effect of limiting recovery of message tax expense to residents of the taxing municipality, the "r" factor method is a far more equitable method of recovery than statewide spreading because the benefit of the utility

tax and the municipal services it helps to provide are enjoyed by the residents of the taxing municipalities.

■ The pertinent language of former section 36(c) and current section 9—222.2 of the PUA is "such method is not required where practical considerations justify a utility's use of another just and reasonable method of recovering its entire liability for such tax." (Ill. Rev. Stat. 1987, ch. 111⅔, par. 9—222.2.) It is clear that the language used by the legislature does not expressly authorize the use of spreading. Unfortunately, the legislative histories of the two enactments do not reveal the intent of the legislature in adopting the language that it used. Our interpretation of the statute, therefore, must be limited to the plain meaning of the language that was adopted.

■ The phrase "just and reasonable" is a standard phrase of art in public utility regulation. It has been used frequently and therefore judicially construed often in the context of utility rate regulation. The statutory language that rates and charges made by a public utility shall be "just and reasonable" has remained unchanged since the enactment of the Public Utilities Act in 1913. (*Union Electric Co. v. Illinois Commerce Comm'n* (1979), 77 Ill. 2d 364, 372, 396 N.E.2d 510, 514.) In the area of rate regulation, the Illinois Supreme Court has construed the term "just and reasonable" to mean a reasonable return on the basis of the fair value of the utility property. (*Union Electric Co.*, 77 Ill. 2d at 369; *City of Chicago v. Illinois Commerce Comm'n* (1966), 34 Ill. 2d 49, 50-51, 213 N.E.2d 550, 551-52; *Du Page Utility Co. v. Illinois Commerce Comm'n* (1971), 47 Ill. 2d 550, 553, 267 N.E.2d 662, 664.) The concept of fair value holds that it is the value of the utility's property devoted to public service upon which the reasonable rate must be returned. *Union Electric Co.*, 77 Ill. 2d at 369.

■ Here, we are not concerned with a just and reasonable method for determining rates, but rather, a just and reasonable method of recovering a utility's tax liability. There is no Illinois case which has specifically addressed this issue. The only support for Illinois Bell's contention that the use of spreading is a just and reasonable method of recovering the MUT is the ICC's order. A reviewing court, however, is not bound by the Commission's order if it concludes that the findings of the Commission are not supported by substantial evidence based on the entire record of evidence presented to the Commission to support the Commission's findings. (See *General Mills, Inc. v. Illinois Commerce Comm'n* (1990), 201 Ill. App. 3d 715, 720, 559 N.E.2d 225; Ill. Rev. Stat. 1987, ch. 111⅔, par. 10—201(e)(iv)(A).) Because we conclude that the findings of the ICC order are not sup-

ported by substantial evidence based on the entire record of evidence presented to the ICC to support its findings, we are not controlled by and do not follow the order of the ICC.

■ Further, we find that an examination of the plain language of Section 9—222.2 of the PUA reveals that tracing and not spreading is the preferred method for recovering the utility's MUT liability. The statute clearly provides:

> "The additional charge *** shall be made *** by adding to the customer's bill a uniform percentage to those amounts payable by the customer for intrastate utility service which are includible in the measure of such tax ***." (Ill. Rev. Stat. 1987, ch. 111⅔, par. 9—222.2.)

It is clear from the language of the statute that the legislature intended that, in the first instance, the utility would recover its MUT liability by adding to the customer's bill a uniform percentage reflecting the tax liability on the services charged to that customer. The second clause provides that tracing is not required where practical considerations justify another just and reasonable method of recovering the utility's entire liability for the tax. This language cannot be construed to authorize the shifting of this tax burden from the consumer of the services to another party who did not utilize the services which gave rise to the tax. It would, however, be just and reasonable to include the tax burden within the pay phone charge or adopt any other just and reasonable method of collecting from the consumers of the telephone services a uniform percentage of the tax charged on their telephone use.

■ ■ Additionally, section 9—241 of the PUA prohibits unreasonable differences in charges between customers or classes of customers. (Ill. Rev. Stat. 1987, ch. 111⅔, par. 9—241; *City of St. Charles v. Illinois Commerce Comm'n* (1961), 21 Ill. 2d 259, 264, 172 N.E.2d 353, 355-56.) Plainly, the shifting of pay phone users' tax burden onto monthly billed customers discriminates against billed customers in violation of section 9—241 of the PUA. It follows that spreading is not a just and reasonable alternative to tracing. The fact that Illinois Bell has found it inconvenient to collect the MUT from pay phone customers does not make it just and reasonable to overload monthly billed customers. We therefore conclude that the trial court did not err in finding that Illinois Bell's policy of spreading the MUT liability from pay phone users onto monthly billed customers was unjust, unreasonable and discriminatory.

Illinois Bell next contends that the trial court erred in ruling that the "r." factor method was not the most just and reasonable method

for recovering the message tax expense from pay phone use. We disagree with defendant's contention.

In the trial court's findings of fact it found that for more than 30 years, Illinois Bell has recovered its Chicago message tax expense by charging each of its monthly billed customers in the city a surcharge reflecting both the message tax expense resulting from the customer's billed intrastate service and the statutorily authorized administrative charge. The surcharge has also included an additional sum to recover the Chicago message tax expense imposed on Illinois Bell's coin pay telephone revenues which Illinois Bell does not collect from its coin pay telephone users. The trial court further found that the method of overcharging monthly billed customers to recover the coin pay telephone message tax expense from monthly billed customers is known as "spreading." The amount "spread" to each monthly billed customer is determined by using a mathematical formula known as the "r" factor.

The "r" factor formula is a ratio or percentage which is applied uniformly to monthly customer bills. The applicable percentage is determined by dividing the total amount of revenue subject to the tax (the tax base) into the amount of billed revenue to which the additional charge is to be applied (the additional charge base) and then dividing the tax rate (5%) by the resulting decimal. The "r" factor percentage is then applied uniformly to monthly bills for intrastate telephone service.

The trial court found that the "r" factor method "spreads" to the monthly billed customer residing in Chicago the Chicago message tax liability not recovered from coin pay telephone users. The trial court found that this results in overcharging the monthly billed customer. In making its finding, the trial court noted that Illinois Bell's expert acknowledged that the "r" factor formula and Illinois Bell's practice of spreading have never been specifically authorized by the PUA.

Under the circumstances, we agree with the trial court that although the "r" factor is uniformly applied to all monthly billed customers, the inclusion in the additional charge base of the revenue from pay phone use results in a formula which improperly overcharges monthly billed customers. The method is therefore unjust and unreasonable. We therefore conclude that the trial court did not err in ruling that the "r" factor method was not a just and reasonable method for recovering the message tax expense from pay phone use.

Finally, Illinois Bell contends that its constitutional rights would be violated if it were not allowed to recover message tax expenses in

the manner that it advocates. Illinois Bell posits that if section 9—241 is held to prohibit spreading, it will be left with a purely illusory right to pass on its tax liability which cannot be exercised. We disagree.

■ Our decision in no way impairs Illinois Bell's right to pass its municipal tax liability on to its customers. Illinois Bell may collect all or part of its tax liability by adding to customer bills .an additional charge representing a *uniform percentage* of the tax liability on the customers' intrastate telephone usage. Illinois Bell, however, is not authorized to. shift the burden of the tax liability from one group of customers to another. To do so would impermissibly violate the PUA by establishing an unreasonable difference in charges made to monthly billed and pay phone customers.

Accordingly, the orders entered in the circuit court are affirmed.

·Affirmed.

CERDA, P.J., and WHITE, J., concur.